## CHARLES H. DAVIS *v.* HENRY C. MILLAUDON, Agent.

The reasoning and the opinion of a court upon a subject, on the evidence before it, does not have the force and effect of the thing adjudged, unless the subject matter be definitely disposed of by *the decree* of the court.

A tender, in open court, of the thing demanded is an admission that the thing itself is due, and is, therefore, inconsistent with the averment that the thing is not due ; neither can defendant withdraw his tender subsequently, so as to affect any rights the plaintiff may have acquired under it.

The plea of payment is inconsistent with a general denial, consequently a plea of tender.

The tender of a thing claimed in a suit, when made in the course of judicial proceedings, and in an unqualified and unrestricted manner, carries always with it the presumption which the law attaches to a judicial confession ; but, where such tender is made, *not of the thing claimed, but of something else*, with a special reservation (if not accepted) of all legal rights, and with the special defence that the thing claimed is not actually due, it has not that conclusive effect.

If one sells or alienates a piece of land, from one fixed boundary to another, the purchaser takes all the land between such bounds, although it gives him a greater quantity than his title calls for, and the surplus exceeds the twentieth part mentioned therein.  Neither can there be increase or diminution on account of disagreement in measure.

APPEAL from the District Court of St. Bernard, *Foulhouze*, J. *George S. Lacey for plaintiff and appellant.*—Upon reading the brief by counsel for defendant and appellee, your honors will perceive that the grounds upon which they rely to maintain the judgment of the court *a quo*, are substantially as follows:

I. This honorable court erred in concluding that the tender of land was an admission that the thing itself is due.

II. That the plea of tender was rightfully withdrawn.

III. That the sale from defendant to plaintiff was one *per aversionem*, and therefore does not give rise to an action for a diminution of price.

13

DAVIS
*v.*
MILLAUDON.

IV. That, if the sale was one *non per aversionem*, the action of diminu-tion will not lie, because "the value of the deficiency in the land sold is not one-twentieth of the total price stipulated in the act of sale, for all the objects sold."

1. "This honorable court in concluding that the tender of land was an admission that the thing itself is due."

We have carefully read the brief of J. M. Ducros, Esq., which is solely directed to the solution of this point; but, we have to confess, that we find in the argument nothing calculated to inspire us with the belief that the position is well taken.

In his pleadings, the defendant alleged that, on the 19th of July, 1859, he purchased about two hundred and fifty acres of land, in the rear of that portion of the plantation which lies on the right bank of the bayou, and this he tendered to the plaintiff, to be considered as forming a parcel of his plantation, in lieu of the deficiency set up as a basis for recovery in diminution of price.

Your honors, in considering the legal effect of that plea, held "that the plea of tender was an admission of a deficiency in the quantity of land sold, and was inconsistent with the plea of the general issue."

In what respect was there error in the judgment of your honors? Could the court have held otherwise than it did? Was not the tender of land to supply a deficiency antagonistic to the idea of no deficiency? Is not an offer to pay an admission that the sum offered is due? Was not the offer, or tender to make good the deficiency, a legal admission that there was a deficiency, and that defendant was bound to make it good? And this, too, notwithstanding he declared "he did not intend to waive the benefit of the plea of the general issue." Can the offer be regarded as a gratuitous donation, when no one, by law, is easily presumed to donate? It seems to us a work of supererogation to attempt to strength-en the position which this honorable court has taken in relation to the plea of tender; and we think your honors will long hesitate before over-ruling the opinion expressed in 14 Annual, 869, and adopting a con-clusion, not only opposite to that opinion, but at war with reason and precedent. Conceding, however, for the sake of argument, that the plea of tender in this case did not admit a deficiency in the quantity of land sold, and that this court fell into an error in thus interpreting that plea, the question arises, can that error now be corrected? We submit unto your honors that the effect of the plea of tender was directly presented for decision when this case was first brought up on appeal to this court; that it was then expressly decided; and the case was remanded to the lower court to be proceeded in upon the principles enunciated in that decision. The defendant did not think it necessary to apply for a re-hearing; the only mode prescribed by law, in which to have corrected the error, if the court had fallen into error. Under such circumstances, the opinion of this court, in 14 Annual, relative to the legal effect of the plea of tender, has become a *res judicata*, and that question cannot now be inquired into between the parties to this cause. In another and a future case, the court may lay down a different doctrine; for, as to such case, the opinion in 14 Annual is but a precedent. It is otherwise, how-

ever, with reference to the cause now before the court: it is a thing adjudged.

Would it not be strange did this court possess the power to determine certain questions at issue between litigants; remand the cause to be tried upon the view enunciated by the court; and after trial, and upon second appeal, to reverse the former opinion, and adopt a conclusion directly opposite to the first decree?

2. "The plea of tender was rightfully withdrawn'."

Counsel for defendant, in their argument upon this point, have committed a two-fold error: one relating to the facts, the other to the law.

They say, on page 3 of their brief: "The revocation was made under an order of court, which permitted the filing of the supplemental and amended answer, by which the withdrawal of the tender was made, and must, therefore, be considered as having been made with the assent or approbation of the judge *a quo*. Again, said withdrawal was effected without any objection or opposition from the plaintiff, who is, consequently, presumed to have acquiesced in it.''

In reply to this assertion on the part of defendant's counsel, we repeat the language of our original brief: "The withdrawal was an *ex parte* proceeding; was in no way brought to the notice of plaintiff's counsel, except by filing the record, and was not concurred in by him; nor was it allowed by the court."

It is contended by counsel for Millaudon, that the tender of land was not accepted by plaintiff; that, until an acceptance was manifested, a judicial contract was not formed; and, therefore, the plaintiff possessed the right to retract and withdraw such tender. Decisions of the Court of Cassation and other French authorities are cited for the purpose of sustaining this position.

We do not understand these authorities as covering a judicial admission made under the circumstances connected with the plea of tender filed in this case; nor do we think the French law can possibly go so far as to declare that a plea of payment or tender is ineffectual against the party thus pleading, until his adversary manifests an acceptance thereof. Be this as it may, the rule which prevails under the jurisprudence of Louisiana is declared in Art. 2270, C. C.: "The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding. It amounts to full proof against him who has made it. It cannot be revoked, unless it be proved to have been made through an error in fact. It cannot be revoked on a pretence of error in law." Art. 2264, C. C., No, 4; 6 An. 719.

Under Article 2270, no acceptance is requisite. A judicial confession, once made, constitutes *per se*, not merely a presumption, but amounts to full proof against him who has made it, and cannot be revoked, unless proved to have been made through an error in fact.

3. "The sale from defendant to plaintiff was one *per aversionem*, and therefore does not give rise to an action for a diminution of price."

The characteristics of the act of sale in question were laid before your honors upon the first appeal, for the purpose of obtaining a decision from the court, whether the sale was one *per aversionem*, or not. This court

held that it·was not a sale *per aversionem*, and remanded the cause to enable the plaintiff to establish his demand in diminution, based upon the deficiency of land. The judgment of your honors upon the question *per aversionem*, like your opinion upon the plea of tender, forms *res judicata;* and the character of the act of sale in controversy is no longer open to inquiry. If, however, the court takes upon itself to investigate the nature of the present sale, then, in order to show that it is not one *per aversionem*, we refer to 'our brief filed upon the first appeal.

4. "If the sale was not one *per aversionem*, the action of diminution will not lie, because the value of the deficiency in the land sold is not one-twentieth of the total price stipulated in the act of sale, for all the objects sold."

We deem it unnecessary to take issue with counsel for Millaudon upon the question of law presented on page 5 of their brief. We may admit that the action for diminution of price, on account of a deficiency in the land sold, will not lie, unless ₋the value of such deficiency equals one-twentieth of the total price stipulated in the acts of sale, for all the objects sold; or, we may assert, that the action *quanti minoris* will lie, wherever there is a deficiency of one-twentieth in the land sold, regardless of the sum given for the totality. In both views, plaintiff's action is fully made out by the evidence. If, as we have supposed in our original brief, the latter be the correct principle, then this action is established by the act of sale showing 1,520 acres sold, and the report of the surveyor fixing the deficiency at 193 acres; 193 is more than ·one-twentieth of 1,520. If, on the contrary, the rule of law has been properly expounded by counsel for defendant, and the view first above taken governs, then this demand is sustained by the act of sale, showing $125,000, the price for the totality of property sold, and the testimony and pleadings in this case, fixing the value of the deficiency from $10,000 to $16,000. 10,000. is more than one-twentieth of 125,000.

There is a wide difference *in the value* of the deficient land, as calculated by the counsel for the respective parties; but, in examining those calculations, your honors will at once perceive that counsel for plaintiff has presented that which should be adopted by the court.

Counsel for Millaudon have, unauthorizedly, located the deficiency in a particular part of the Davis plantation; isolated, as it were, from the rest of the place; regarded it as naked, and unimproved of itself, and deriving no value from the improvements of the plantation; and in this light has presented it for valuation. Counsel for Davis, however, gives 'no particular locality to the deficient land; regards it as making a part of a large·sugar plantation; reflects upon it a proportionate degree of the improvements made upon the plantation as a whole; views it in the exact condition which it was supposed to have, at the time of the sale, and by an average estimate, with the price of the entire land, determines the proportionate value of the 193 acres of which there is a deficiency. He places the quality of the 193 acres upon an average basis; and, having thus fixed the character of the land, he arrives at its value by ascertaining the sum given per acre, at the time of the purchase by Davis, and mul‑

tiplying that amount by 193. This is, essentially, an average computation throughout; and, in cases of deficiency, that mode of ascertaining the damage sustained by the purchaser is the only one which can be adopted. Where there is an eviction, it might, perhaps, be otherwise. The land from which the party may be evicted can be examined; its condition, quality and value shown; and, under such circumstances, the relative instead of the average value of the evicted premises might be the true criterion whereby to measure the damages sustained. Not so, however, where diminution of price is claimed on the ground of deficiency in the land sold.

Chancellor Kent, in his Commentaries, p. 477, vol. 4, edition 1848, lays down the rule of computation in cases of eviction and deficiency, and in relation to the latter he says : "The measure of compensation for a deficiency in the quantity of land, in the case of a sale by the acre, unattended by special circumstances, has been assumed, in some cases, to be the average and not the relative value. But, in cases of eviction, justice evidently requires that the relative instead of the average value be taken as the rule of computation." Such, likewise, seems to be the view taken by your honors, in the opinion reported in 14 Annual, 869. The language of Mr. Justice Land is : "If a vendor has the right to tender other lands in satisfaction of a vendee's demand for a reduction of price, in consequence of a deficiency in the quantity of land sold, the tender should be of lands of the same quality and value as those actually conveyed, * *" And the same rule necessarily applies, when the deficiency is supplied otherwise than by a tender.

*J. M. Ducros and Cyprien Dufour for defendant.*—The nature of this suit is well stated by the appellant's counsel, as follows :

"This is an injunction suit, to arrest the execution of an order of seizure and sale, sued out for the collection of a mortgage note, given in part payment of the price of a plantation and slaves, purchased by the plaintiff from one Benjamin L. Millaudon. The ground upon which Davis now claims to maintain the injunction is a deficiency in the quantity of land sold, exceeding one-twentieth, and which, he avers, has diminished the value of the plantation in the the sum of, at least, $16,000."

The answer of the defendant denies the right of the plaintiff to call upon him for a diminution of price, for various reasons. The principal reason is that the sale from the defendant to the plaintiff, being one from boundary to boundary, is a sale *per aversionem,* and therefore gives no right of action for a diminution of price.

Article 2471, C. C.: "There can be neither increase nor diminution of price, on account of disagreement in measure, when the object is designated by the adjoining tenements, and sold from boundary to boundary."

The property sold is thus described in the act of sale, to wit : "A certain sugar plantation situated on the Bayou Terre aux Bœufs, in the said parish of St. Bernard, known by the name of Coiron's estate, at about three miles from the river Mississippi, said parcel or tract of land being and lying on both sides of the said Bayou aux Bœufs, and measuring 1,520 arpents, and being bounded on both sides of the said bayou, on the up-

DAVIS
v.
MILLAUDON.

per line by land belonging to the heirs of Joseph Ramirez, and on the lower line by land belonging to the estate of Joseph Sanchez."

Such is the description given of the property sold, and the question arises : Is this not a sale from boundary to boundary? It is impossible to imagine a case more in point than the present one for the illustration of what is termed in our jurisprudence a sale *per aversionem*.

In *C. H. Davis* v. *Laurent Millaudon*, the same point being raised for the same object, the court was called upon to determine the nature of this sale, and the court held : "The sale from B. L. Millaudon to Davis is a sale *per aversionem*." 14 A. 808; *C. H. Davis* v. *Laurent Millaudon*.

This case, however, has been once already on appeal before this court, and is now presented to your honors for the second time ; and the counsel for the appellant says, at page 5 of his additional brief : "The characteristics of the act of sale in question were laid before your honors upon the first appeal, for the purpose of obtaining a decision from the court, whether the sale was one *per aversionem*, or not. This court held that it was not a sale *per aversionem*, and remanded the cause to enable the plaintiff to establish his demand in diminution, based upon the deficiency of land. The judgment of your honors upon the question *per aversionem*, like your opinion upon the plea of tender, forms *res judicata;* and the character of the act of sale in controversy is no longer open to inquiry."

The counsel is clearly mistaken.

This court has not held, in the judgment referred to, that the sale was not one *per aversionem*.

The decision rendered upon the first appeal involved only matters incidental to the main issue ; and the cause was remanded, not as the counsel says, "to enable the plaintiff to establish his demand in diminution, based upon the deficiency of land," but, in the very terms of the decree, "remanded to the lower court for further proceedings according to law." The record shows that, in the course of the first trial in the court below, the defendant filed a supplementary answer, in which, amongst other pleas, the following is to be found :

"That, though denying the right of the plaintiff to call upon him for a diminution of price, for the various reasons set forth in this and the original answer, yet, this respondent has purchased from the government, on the 19th day of July last, some two hundred and fifty acres of land, in the rear of that portion of the plantation which lies on the right bank of the bayou, which this respondent hereby tenders to said plaintiff, to be considered as forming a portion and parcel of his plantation." .

A fundamental error is in confounding as identical the plea of payment and the plea of tender.

Payment is one of the modes by which obligations are extinguished. Art. 2126, C. C.

It is a cardinal rule that every payment pre-supposes a debt. Art. 2129, C. C.

It follows, of course, that whenever a plea of payment is entered it admits the pre-existence of the debt which it assumes to have extinguished.

Hence, the Supreme Court has invariably held that the plea of payment is a peremptory exception; it is a plea going to extinguish the action. It

DAVIS<br>v.<br>MILLAUDON.

must therefore be pleaded specially, and of course it assumes the pre-existence of the claim, because a thing that was not could not have been extinguished. 6 L. 457, *Gleises* v. *Faurie.*

A tender, on the contrary, is a totally different plea. It is surely an admission of something, but a material inquiry arises as to the essence of the offer, in order to ascertain what is admitted. If it be an unconditional tender of the thing demanded, it is at once an admission of the right and a satisfaction of the claim of the other party. But if it is made without prejudice, in a manner showing the party is willing to submit to a sacrifice and to make a concession, the circumstance of such an admission cannot be disconnected from it. It is a most lamentable mistake to say that an admission, thus made, is inconsistent with a plea that the thing demanded is not due. The declarations and qualifications accompanying the tender, on the contrary, are most essential to give it its true character.

"The judicial confession is the declaration which the party makes in a judicial proceeding. It cannot be divided aginst him." Article 2270, C. C.

"A distinction is taken between the admission of particular facts and an offer of a sum of money to buy peace. For, as Lord Mansfield observed, it must be permitted to men to buy their peace without prejudice to them, if the offer should not succeed; and such offers are made to stop litigation, without regard to the question whether anything is due or not. If, therefore, the defendant, being sued for £100, should offer the plaintiff £20, this is not admissible in evidence, for it is irrelevant to the issue ; it neither admits nor ascertains any debt; and is no more than saying he would give £20 to be rid of the action." 1 Greenleaf, § 192.

In a case where an offer to pay a portion of the debt was urged as an assent to the interruption of prescription, this court said :

"We consider the conversation, taken as a whole, as a proposition by the defendant to buy his peace, as an offer of partial payment, upon condition that the note should be given up to him, which proposition was declined, and so the position of the parties remained unchanged." 9 A. 17, *Lackey* v. *MacMurdo.*

ILSLEY, J. This is an injunction suit, sued by Charles H. Davis, out of the Second Judicial District Court of the parish of St. Bernard, to stay proceedings *via executiva,* which B. L. Millaudon was carrying on in the same court, for the collection of a mortgage note, given by Davis in part payment of the price of the *Coiron Estate,* which is described in the act of sale from B. L. Millaudon to C. L. Davis, as follows: "A certain sugar plantation known by the name of *Coiron's Estate,* at about three miles from the river Mississippi, said parcel or tract of land being and lying on both sides of the said Bayou aux Bœufs, and measuring fifteen hundred and twenty arpents, and being bounded on both sides of the said bayou, on the upper line by land belonging to the estate of Joseph Ramirez, and on the lower line by land belonging to the heirs of Joseph Sanchez" ; besides other property on and thereunto attached, the price of the whole property in block being a fixed one.

This is the second time that this case is presented to the Supreme

Court for its decision (see 14 An. 868); and as great reliance is placed by Davis on the enunciation by the late Supreme Court, of certain principles, as final on the particular points passed on, and as having on those points the force and effect of *res judicata*, it becomes necessary to determine now, whether this position be a tenable one.

On examining the decretal part of the judgment on the first appeal, we find that it merely avoids and reverses the judgment of the lower court, and remands the case for further proceedings, according to law.

In *Pepper* v. *Dunlap*, 5 An. 200, it was held "that the reasoning and the opinion of a court, upon a subject on the evidence before it, does not have the force and effect of the thing adjudged, unless the subject matter be definitely disposed of *by the decree* of the court." And *Thompson* v. *Mylne*, 4 A. 206, is upon the same point and to the same effect.

Marcadé. vol. 5, p. 386, says:

"Quant au point de savoir quand il y a a *res judicata*, il est assurément bien simple, quoique controversé. La raison, d'accord avec les textes et l'autorité de Pothier, dit assez que dès là qu'un jugement est prononcé, dès là que le point litigieux est judiciairement décidé, il y a *res judicata*. Il est clair; au surplus, que la chose jugée n'existe jamais que dans le *dispositif* du jugement, non dans ses motifs (qui ne pourraient être consultés à cet égard que pour expliquer le sens d'un dispositif obscur); et seulement dans les parties de ce dispositif qui méritent vraiment ce nom parcequ'elles tranchent la contestation, et non dans celles qui ne présenteraient que des énonciations."

See also *Jackson* v. *Tiernan*, 15 La. 485; *Josephine* v. *Lee*, 6 Wheaton, 109.

This court has, therefore, no hesitation in saying that all the matters presented to it in this case, whether arising out of the pleadings or the evidence adduced, remain under its entire control, unshackled by any previous action thereon, when it was examined on the first appeal. The opinions and *obiter dictu* of our predecessors, particularly in suits which have once been submitted to them, and are again before this court for revision, are entitled to and will always receive due consideration; but, as the late court retained supervisory power over all the questions involved, so will this court exercise the same power, discreetly, if the ends of justice can be thereby subserved.

The first question, then, is, as to the legal effect of the tender by Millaudon of other lands, to supply the deficiency in the tract sold by him to Davis; and on this point we are constrained to differ from the late court, which, however, only passed on it incidentally, in connection with a motion for a continuance, which had been overruled in the District court. The court, *arguendo*, on this point held, "that the plea of tender was an admission of the deficiency in the quantity of the land sold, and was inconsistent with the plea of the general issue, and this inconsistency was not avoided by the defendant's declaration that he did not intend to waive the benefit of the latter plea.

A tender in open court of the thing demanded, or its equivalent, is certainly an admission that the thing itself is due, and is, consequently, inconsistent with an averment that the thing is not due. It has ever been

held that the plea of payment is inconsistent with a general denial; and a plea of tender cannot be less so.

After the rendition of the judgment remanding the case, Millaudon, by an *ex parte* proceeding, withdrew his tender, (which he could not do to affect any right Davis might have acquired under it,) but which he does not urge. See *Boatner* v. *Scott*, 1 Rob. 546; *Kohn* v. *Marsh*, 3 R. 48.

We will, therefore, proceed to examine the very important question, whether the qualified tender of *other lands*, with a concurrent reservation of all legal rights, and the special plea that he, Millaudon, was not legally liable for the deficiency, because the sale to Davis was one *per aversionem*, precluded him from availing himself afterwards of that defence.

The tender of a thing claimed in a suit, when made in the course of judicial proceedings and in an unqualified and unrestricted manner, carries always with it the presumption which the law attaches to a judicial confession; but, when such tender is made, *not of the thing claimed, but of something else*, with a special reservation (if the tender is not accepted as made), of all legal rights, and with the special defence that the thing actually claimed is not due, we cannot give to a tender so made the conclusive effect claimed for it by Davis. It was virtually an offer on the part of Millaudon to buy his peace, and to put a stop to litigation. If it amounted to anything at all, as an admission, it did not go to the extent that the thing claimed was due; but simply admitted that there was a deficiency in the measurement of the land sold, but it did not preclude the party from using the defence on which he relied, if his specific offer was not accepted. See *Hough* v. *Vickers*, 6 A. 724; Paillet, Manuel de Droit, note 17 to Art. 1356 N. C.; Merlin, verbo Confession, § 3; Brunoman, ad. 1. 28.

The main question is now reached, whether the sale from B. L. Millaudon to Davis was, or was not, one *per aversionem*. The description in the notarial act of sale is the *Coiron Estate*, lying on both sides of the bayou Terre aux Bœuf, between the plantations of José Ramirez and that of the heirs of Sanchez. The length of the lines fronting on the bayou is not given, but the superficial area of the property, amounting to fifteen hundred and twenty-five arpents, is expressed.

The circumstance that gives rise to the controversy now under consideration is, that in the description of the property sold, no rear boundary is defined; but that is an incident so common in the sale of lands lying on the rivers and bayous of this State, the primordial titles to which extend to the ordinary depth of forty arpents, that when in sales or other transfers of lands, so situated, no mention is made of the depth, that depth is always presumed.

It was so held in *Carraby* v. *Desmare*, 7 N. S. 664, by Judge Martin, (than whom no one was better acquainted, from long practical experience, with the mode in which rural property so situated was usually described), and he therein says: "In sales of lands on the Mississippi, the tract is sometimes described by the extent of its front and the names of the owners of the tracts above and below. Nothing is said of the owner of the tract in the rear, because, generally, the tract extends to another stream, or to an uncultivated swamp. In such a sale, the ordinary depth of forty arpents is presumed as that which the vendor pos-

sessed, unless the contrary is shown. The question is one of intention as to depth, in the solution of which the court is aided by the situation of the land and the price, etc." The length of the front lines of the Coiron estate was not mentioned in the act of sale; but it can hardly be doubted that, in the sale of such a property, the vendee could have been ignorant of it; and the area being set forth, the depth of the tract could be readily ascertained. Had the lateral lines run parallel to each other on both sides of the bayou, there could have been no deficiency at all. The difficulty is caused by the converging eastern boundary line on the north side of the bayou; but, as Davis bought the land with special reference to that boundary, he must be presumed to have known in what direction it ran. There is, probably, no subject which has given cause more frequently for judicial investigation than that arising under Articles 2471 and 850 of the Civil Code. Our Reports teem with examples as to what do and what do not constitute sales *per aversionem;* and it is therefore not difficult to determine whether the sale of the Coiron estate belongs to that class or not. Among the numerous cases to which our attention has been directed, and which have otherwise fallen under our observation, there are some very similar, if not analogous, in their main features, to that of the Coiron estate; and they were all deemed sales *per aversionem.*

We give below the descriptions contained in the sales, extracted in each of the following cases:

1. In *Brazeale & Sewell* v. *Bordelon,* 16 La. Rep. 335, as follows:

"A certain tract or parcel of land on which the said Perot and wife reside, situate in the parish of Natchitoches, on both sides of the Red river, containing about two hundred and twenty arpents, bounded above, on *both* sides of the river, by lands of the purchasers, and below, on the left (of the bayou), by lands belonging to them, and on the right (of the bayou) by land of Antoine Lenoid."

In *Préjean* v. *Giron et al.,* 19 La. p. 423, as follows:

"One tract of land lying situate in the parish of St. Martin, at Cote Gelée, containing four arpents in front, with the depth that may be about thirty-five or forty arpents, the *front* of the said tract beginning at the extremity of the land of Pierre Giroir, bounded on the one side by the lands of Baptiste Comeaux, and on the other side by the lands of Madam Clark Beaton."

In *Saulet* v. *Trépagnier,* 2 Rob. 358, as follows:

"Ce qui compose bien l'habitation mentionnée aux présentes, de dix-sept arpents de face au fleuve, sur une profondeur, qui sera déterminée par les titres ce qui agreé à l'acquéreur, bornée dans sa partie supérieure par l'habitation Dieudonné, et dans sa partie inférieure par celle de Mme. Veuve Delhommer."

In *Nicholes* v. *Adams,* 9 A. 117, as follows:

"A tract of land situate in this parish (Pointe Coupée), at a place called 'Village,' where the said vendor now resides, containing twenty-six arpents front, and bounded *above* by land of Elijah Adams, and *below* by land of Marcelin, f. m. c., with a special reservation of four superficial arpents from the upper line, which four acres have been sold by the present vendor to O. F. Hornsby; the tract, object of this sale, containing, after the above reservation, eight hundred and fifty superficial arpents,

more or less.    This land fronts on the Mississippi river, as appears by titles referred to."

In no one of the cases cited is there any reference whatever to a *rear* boundary.

Wherever, as in many of the cases referred to, the tracts sold are of triangular form, with front and lateral boundaries described, or when, as principally in the sale of town lots, all the boundaries are described, they necessarily fall within the class of sales termed *per aversionem*.

But it will be seen that, in almost every case which were pronounced not sales *per aversionem*, no boundary whatever, or only one, was given.

It was so in *Lacour* v. *Watson*, 12 A. 215; *Fisk* v. *Flemming*, 15 La. 205; *Hall* v. *Nevil*, 3 A. 327; *Boyce* v. *Cage*, 7 A. 673; and they were necessarily excluded from that class of sales.

The sale of the Coiron estate was that of a specific thing, for a whole price in block; and, as it was held in *Jackson* v. *Barringer*, 15 John. Rep. 353, Davis "must be presumed to have known what land was contained in the expressed boundaries."

The identical question, as to the character of this sale, has been already solved by the late Supreme Court, in the case of *Laurent Millaudon* v. *Chas. H. Davis*, in 14 A. p. 808.   In that case Davis sets up the defence of *quanti minoris* against L. Millaudon, who was prosecuting his claim, on a mortgage note, bearing on the Coiron estate, the payment of which Davis had assumed, as a part of the price of that property.

From what precedes, and in view of what we deem a fair legal construction of Articles 2471 and 850, C. C., enacted, in all probability, with a special view to the peculiar topography of the country, we conclude that the sale of the Coiron estate was one *per aversionem*.

Our attention has been called to several bills of exception, spread upon the record; but, as they all relate to the claim of Davis for a diminution of price, which we do not sustain, we do not deem it necessary to pass on them.

The judgment of the District Court must be, therefore, affirmed,

It is ordered, adjudged and decreed, that the judgment of the lower court be affirmed, at the costs of the appellant.