## GEORGE G. EALER *v.* JAMES P. FRERET.

11  455
113  736

After the testimony had been taken, and the argument commenced, the cause was continued. Pending the continuance a new judge was elected, who refused to try the case *de novo*, but permitted counsel to take bills of exceptions to the testimony which had previously been introduced. *Held:* The plaintiff had the right to have the cause tried *de novo*, but as he was not prejudiced by the action of the court, inasmuch as his bill of exceptions shows that his sole purpose in asking for a trial *de novo*, was to allow him to except to certain evidence, which the court permitted, there is therefore, no error in the proceedings of the inferior court.

Parol evidence is admissable to show fraud in the registry of title to a steamboat.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *R. & H. H. Marr* and *Mott & Fraser*, for plaintiff and appellant. *Thomas Hunton*, for defendant.

MERRICK, C. J. (SPOFFORD, J., dissenting.) There are several bills of exception in this case which must be disposed of before considering the merits.

The first we notice is, the bill taken by the plaintiff to the refusal of the judge to try the case *de novo*. It appears that whilst the predecessor of the present District Judge was on that bench, the testimony was heard and the argument of one of the counsel concluded, but there being a want of time to complete the case, it was continued. At the trial, in November, 1855, the defendant's counsel moved the court to take up the case just as it was left at the former trial in July, that is to treat the testimony as concluded. The

plaintiff opposed the motion and insisted that "the testimony should be offered anew, subject to all legal exceptions." The court refused to allow the testimony to be offered *de novo*, and the plaintiff excepted. It is, we think, clear that the plaintiff had the right to try the case *de novo*. The judge before whom the case had been submitted, having failed to render judgment, the regular mode would have been to proceed as in the case of a new trial. But it is not enough for the party who desires the reversal of a judgment to show that the court erred, he should show that he has been prejudiced by such decision.

The bill of exceptions in this case shows that the plaintiff desired to try the case *de novo* for one purpose only, viz: to secure himself the right to except to the testimony as it should be again offered. This right appears to have been accorded him, at the last trial of the case. Seven bills of exception to testimony, attest the fact that the parties were not prejudiced by the refusal of the District Judge to go through the formality of requiring the testimony to be offered piece by piece, as was done on the first trial.

Had the plaintiff been prevented from offering other and further testimony, or from excepting to the testimony offered, it would have been clearly error. As the case is now presented to us the plaintiff has not been prejudiced, he merely wished to except to the testimony and he has fully exercised that right. Parol proof was admissible on behalf of the attaching creditors to show that the real interest in the steamboat was in *T. Graham & Son*. The Act of Congress requiring the registry of the title of steamboats and other vessels, was intended as a protection against fraud. It could never have been in the contemplation of Congress to make it a shield to a party who had made a false and fraudulent registry. But to hold that no proof except written evidence could be adduced to show fraud, would be to give such effect to the Act. It is well settled that the registry, so far from being conclusive proof of title, is so little considered, that it requires some auxiliary evidence in order to charge, as owner, the party in whose name the vessel is registered. 1 Greenleaf Ev. No. 494.

We think the judge *a quo* erred in receiving the testimony of those of the attaching creditors who were examined as witnesses. It is true they are not parties to this suit, nevertheless the judgment in favor of the defendant who is merely their agent, would directly benefit them. The testimony, therefore, of *A. H. May, L. M. Wilson, J. A. Greer, A. M. Elgin, John Cline and W. A. McClure* must be excluded.

With this testimony rejected, the defendant is without sufficient evidence to overcome the repeated written and verbal acknowledgments of *T. Graham & Son*, that they had no interest whatever in the steamboat Louisa. Still there is in the record a document which, as the case now stands, must have a controlling effect in this controversy. It is the document executed by *Scotto C. Burrell* and *T. Graham & Son*, as the boat was leaving for St. Louis for sale. It provides for the sale of the boat; and *L. J. T. Wilson*, the clerk of the boat, was empowered to receive three-fourths of the proceeds, and by him to be handed to *Messrs. May & Vanhook*, of New Orleans, for the purpose of securing to *L. M. Wilson* and *Dorancy & Son*, and the balance to be placed on their said *May & Vanhook's*, books to the credit of said *T. Graham & Son*. The other one-fourth of the proceeds was by said contract to be paid to *Scotto C. Burrell*. It was also provided that if the boat could not be sold within one week at St. Louis she was to be brought back to New Orleans.

This instrument signed by *Scotto C. Burrell* and *T. Graham & Son*, indirectly <span style="float:right">EALER<br>v.<br>FRERET.</span> recognizes *Scotto C. Burrell* as the one-fourth owner and *Graham & Son* as the owners for the other three of the boat, and in the doubt created by the other testimony, they must be considered as owners in that proportion.

We think that the testimony shows that *Henry D. Ealer* and *George G. Ealer* were aware of the presence of *J. T. W. Graham*, of St. Louis, and that they knew *S. C. Burrell* was without authority to sell the boat, and we think that the purchase by *George G. Ealer* was, under the circumstances, in fraud of *T. Graham & Son.*

The only title, therefore, which *George G. Ealer* acquired by this sale was the one-fourth interest which *Scotto C. Burrell* owned in the boat. Claiming as *George Ealer* does, the proceeds of the sale of the boat, we think he is entitled to recover one-fourth of the proceeds of the steamboat Louisa in the hands of the defendant. It is, therefore, ordered, adjudged and decreed by the court that the judgment of the lower court be reversed, and that the plaintiff do recover of the defendant and have judgment against him for the one-fourth part of the proceeds of the sale of said steamboat in the hands of the sheriff, after deducting simply the costs of the sale, and no other costs, and it is further ordered that this case be remanded to the lower court to make the deduction and ascertain the said one-fourth and award execution therefor. And it is further ordered that the defendant and appellee pay the costs of both courts.

SPOFFORD, J. (dissenting.) Concurring in many of the views expressed by Mr. C. J. MERRICK, I am yet unable to see how the plaintiff can recover any part of the proceeds of the boat.

I regard the plaintiff and his brother *Henry D. Ealer* as one person in the transaction with *Scotto C. Burrell*, at St. Louis; and, concurring in the opinion of the Chief Justice that they had notice of the title of the *Grahams*, and of the lack of authority in *Burrell* to sell at the time he did, I am compelled to regard their pretended purchase as a simulation, the result of collusion with *Burrell*, which can give the plaintiff no claim in law or equity upon any part of the proceeds.

There is, in my judgment, no such proof of title in *Scotto C. Burrell* as would authorize *Burrell* himself, still less his fraudulent pretended vendee, to recover anything. And the plaintiff can only recover upon the strength of his title. The defendant was not bound to show title in the *Grahams*.

I think the judgment should be affirmed.