(37 South. 624.)

No. 15,086.

NEW ORLEANS TERMINAL CO. v. TELLER.

(Dec. 5, 1904.)

EXPROPRIATION—EXCEPTIONS TO THE MERITS—
APPEAL—HARMLESS ERROR—CORPORA-
TION—ACTION—PARTIES.

1. The court again animadverts upon the deplorable practice of referring to the merits exceptions that do not involve the merits.

2. Especially should not such exceptions be referred to the jury of freeholders, whose jurisdiction is special, and extends to those questions alone which the law directs shall be submitted to it.

3. Not every error will furnish sufficient ground for setting aside a judgment and ordering another trial. There must be prejudice to the appellant, and the prejudice must be such as cannot be remedied on the appeal.

4. A corporation can sue in its own name, without any necessity of designating its president or any of its other officers in the petition.

5. Private property can be expropriated under the eminent domain power only for a public purpose. Hence the defendant in an expropriation suit may always raise the question of whether the purpose for which his property is sought to be expropriated is public in its nature. Whatever may be the reason why the purpose is not public, it may be shown.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by New Orleans Terminal Company against Alvine Teller. Judgment for plaintiff, and defendant appeals. Reversed.

Saunders & Gurley, for appellant. Farrar, Jonas & Kruttschnitt, for appellee.

PROVOSTY, J. The plaintiff, alleging itself to be a railroad corporation duly incorporated under the laws of this state, has brought this suit to expropriate a square of ground in the city of New Orleans belonging to the defendant.

Defendant excepted to the petition on the two grounds: First, that the purposes for which the property is sought to be expropriated are not stated in the petition; and,

second, that the suit is not brought or authorized in the manner required by law.

Over the objection of the defendant, the court referred the exception to the merits; that is to say, to the decision of the jury of freeholders.

In so doing the court erred. Obviously the question of the sufficiency of the petition was one properly to be decided before defendant should be required to answer to the merits. In the next place, the questions raised were "incidental questions arising in the course of the trial," such as are to be "decided summarily, without the intervention of a jury." Code Prac. arts. 755, 757; McGehee v. Brown, 3 La. Ann. 272; Goodloe v. Holmes, 2 La. Ann. 400. And moreover the jury of freeholders in an expropriation suit is not an ordinary jury, or, in other words, a tribunal or court of general jurisdiction, but is a tribunal or court of special jurisdiction, qualified to pass on those questions alone, which the law has prescribed shall be submitted to it. With matters pertaining to the sufficiency of the pleadings for bringing the case before the court, such a tribunal can have nothing to do.

The defendant had the legal right to have the exceptions disposed of as exceptions, and of this legal right she has been deprived by the unwarranted action of the lower court. This court has again and again animadverted upon the deplorable practice of referring to the merits exceptions that do not involve the merits.

The worst of it is that by the time a case reaches this court the evil of this practice has been wrought and is beyond remedy, and this court is made to countenance a thing it deprecates and condemns—a halfway denial of a litigant's full measure of justice. In the present case, for example, the error is found not sufficiently prejudicial to the appellant to justify the setting aside of the judgment and ordering of another trial, and yet the appellant certainly had the legal right to have the

exceptions passed on as exceptions, and has been deprived of that right.

The deficiency of the petition was caused by the failure to file certain maps annexed to and made part of it, for the purpose of showing to what use the land was intended to be put. Counsel say the failure to file these maps was due to an oversight on the part of a clerk in their office. The petition alleged that the land was needed for railroad purposes, but did not describe or specify the purposes, otherwise than by a reference to the maps. The maps were, however, produced and filed on the trial, and they showed that the land was sought to be taken for the laying of storage and classification tracks. As thus supplemented, the petition was full and complete, and as a result the exception was fully met.

Had the maps not been filed at all, or had the defendant, when they were filed, asked to amend her answer, or for further time in which to prepare her defense, and the court had refused, or even had the defendant objected to the filing of the maps, and stood upon her right to have a legally sufficient petition served upon her before she should be required to answer, the exception would most unquestionably have had to be now sustained and the case sent back for another trial. But the defendant permitted the maps to go in without objection, did not plead surprise, did not ask for further time, but went on and tried the case as if the petition had been sufficient from the beginning and the exception had never been made; and this court is satisfied that the case as presented by the record is precisely the same as it would have been if the petition had been perfect. Under these circumstances, it would serve no useful purpose to now sustain the exception and remand the case for another trial.

Not every error will furnish sufficient ground for setting aside a judgment and requiring a case to be tried over again. There must be prejudice to the appellant, and the prejudice must be such as cannot be remedied on the appeal, but only by another trial. Ealer v. Freret, 11 La. Ann. 455; Bush v. Decuir, 11 La. Ann. 503; Smith v. McWaters, 7 La. Ann. 146; Howell v. St. Charles St. R. Co., 22 La. Ann. 604; Levi v. Weil & Bro., 24 La. Ann. 223; State v. R. Co., 34 La. Ann. 951; 3 Cyc. 387.

The second exception was founded on the fact that neither the name of the president nor of any other officer of plaintiff corporation was stated in the petition, but only that of the corporation was stated.

The court sees no reason why such an appearance by a corporation should not be entirely sufficient. A corporation is a person, and does not labor under any incapacity, like a minor or an interdict. What good reason could there be, then, why it should not sue in its own name alone? True, it can act only through agents, it being a mere juridical person; but, inasmuch as it has the capacity to stand in judgment for itself, what necessity is there for naming these agents in the petition?

The law governing the matter is article 112 of the Code of Practice, which reads as follows:

"Corporations, bodies corporate and chartered institutions act judicially through their proper representatives under the name or title given to them in the act of incorporation."

Grammatically this text is susceptible of the reading that corporations act judicially through their proper representatives under the name or title given to these representatives in the act of incorporation. But that reading would preclude corporations from appearing judicially in their own names—would place them on a plane with minors and interdicts—and therefore is evidently not the true reading.

The "the" before the words "act of incorporation," in the article, should be "their," and the true reading be that corporations act judicially through their proper representa-

tives under the name or title given them in their (not "the") act of incorporation. The "the" in place of the "their" crept into the revision of 1870 by a manifestly clerical error, as appears by reference to the text of the original Code, and especially by reference to the French text. It is well known that the English text of the original Code was a translation from the French, the Code having been written in French.

Corporations, then, act judicially in their own names. Of course, judicially and in every other way, they act through their proper representative. Being mere ideal persons they cannot, in the nature of things, act in their own persons; but the Code does not say that these representatives shall be named in the petition, nor, as in the case of minors and interdicts (article 109), that these representatives act themselves, without making their principals parties to the suit. It is notable that when a corporation is sued its president or other officer need not be designated. The suit is brought directly against the corporation by name. Article 119, Code Prac.

It has been held that without special authorization the president of a police jury cannot bring suit in his own name in behalf of the police jury, and that the absence of the special authorization need not be specially pleaded, but may be taken advantage of under the general denial by assignment of error on appeal. Hoffpauir v. Wise, 38 La. Ann. 704.

At common law it seems to have been at one time questionable whether a corporation could not appear judicially even without the intervention of an attorney at law. Ency. of Pleading & Practice, vol. 2, p. 699.

In the case of Ins. Oil Tank v. Scott, 33 La. Ann. 946, 39 Am. Rep. 286, this court held that the failure to state the name of the officer of the corporation in the petition was a defect, but that the defect was cured by proof of the suit having been brought by au-

thority of the board of directors. So, in the case of Lacaze & Reine v. Creditors, 46 La. Ann. 239, 14 South. 601, the court treated the case as one involving the question of whether the suit had been brought by authority, and held that, although no officer was named in the petition, yet that the petition was sufficient, because the affidavit of the vice president was itself sufficient proof of the suit having been authorized.

In these cases the court seems to have confounded between the want of authority to bring the suit and the failure to name the president or other officer of the corporation in the petition. But the want of authority is one thing—it goes to the substance; the failure to name the officer is another and entirely different thing—it is a mere matter of form. If the petition was fatally defective in form, how could the defect be cured by proof that the suit had been authorized, which had absolutely nothing to do with form? In effect, therefore, the decision of the court was that, so long as the suit is duly authorized to be brought, the failure to name the president or other officer is insignificant.

In the Scott Case the court did not discuss the question of whether the failure to name the president or other officer of the plaintiff in the petition was or not a defect, but seems to have assumed that it was. In the Lacaze & Reine Case the court cited article 112, Code Prac., and interpreted it as requiring that the president or other officer of the corporation be named in the petition. A different view is now taken, and the court holds that the suit may be brought simply in the name of the corporation, without naming its president or other officer.

The second exception was without merit, and, this being so, the error of the lower court in not passing upon it cannot furnish good grounds for setting aside the judgment and remanding the case for another trial.

Under full reserve of the exception, defendant filed an answer, in which, after a general denial, and an admission of the ownership of the property in question, she went on to allege and plead as follows:

"Third. Further answering, respondent says: That the plaintiff herein pretends to be a corporation organized under the laws of the state of Louisiana for the purposes of constructing or acquiring and operating a line of railway from the city of New Orleans, in the state of Louisiana, to the city of Chicago, in the state of Illinois, 'upon such line as may hereafter be selected by the company.'

"That said railroad would be about eight hundred miles in length, and would cost, to construct and equip, from fifty to one hundred millions of dollars.

"Your respondent shows that the authorized capital stock of the plaintiff herein is only two million dollars, and that plaintiff's charter contains a provision that the plaintiff company should be a going concern, authorized to do business, when six thousand dollars of its capital stock shall have been subscribed. Respondent avers that only said six thousand dollars of the capital stock of the plaintiff corporation has been subscribed for, and respondent denies that even the said six thousand dollars of stock so subscribed for has ever been paid in.

"Respondent further shows that the plaintiff herein has not executed any mortgage of any sort for the purpose of raising money.

"Respondent further shows that the plaintiff herein has not selected any route or line for a railroad between the cities of New Orleans and Chicago, has not surveyed or attempted to locate any such line, has not procured or attempted to procure any terminal facilities in the city of Chicago, and has not contracted for the building of any part of the railroad line between said cities, nor even for the survey or location of any such line.

"Respondent denies that it is the intention of the plaintiff corporation, or of the shareholders of said corporation, to build any line of railroad between said cities of New Orleans and Chicago.

"Further answering, respondent says:

"That the city of New Orleans cannot by its ordinances confer upon any corporation any right to expropriate private property; that the right of expropriation is one conferred and limited by the Constitution and statutes of the state of Louisiana, and is not in any respect enlarged in favor of the plaintiff herein by the ordinance of the city of New Orleans No. 1615, N. C. S., which is pleaded and relied on in the petition herein.

"Respondent further shows that it is the declared purpose of the plaintiff herein to expropriate fifty consecutive squares of ground for the terminal facilities of said railway line from New Orleans to Chicago, which it is apparent the same corporation has neither the means to construct, nor any intention of attempting to construct, and which respondent avers never will be constructed.

"Respondent denies that it is the intention of the plaintiff corporation to expropriate and acquire said squares of ground for the purposes of said railroad line mentioned in plaintiff's charter, and avers that it is the design of the plaintiff to acquire said squares of ground for other purposes.

"Respondent expressly denies that it is the intention of said plaintiff to acquire respondent's square of ground for the purposes of a right of way for its railroad line.

"Respondent denies that the plaintiff corporation has any need of any land in the city of New Orleans for the terminal facilities, as the said plaintiff does not own and has not the means of building or acquiring any line of railroad into the city of New Orleans, and will never acquire or own any line of railroad running into said city from Chicago or any other point.

"Respondent further shows that the petition herein does not disclose the purposes for which plaintiff conceives that it needs and is justified in expropriating said square of ground, and respondent denies that said square of ground is necessary to the plaintiff for any purpose whatever.

"Respondent shows that the quantity of ground which the plaintiff herein declares that it is its intention to expropriate exceeds the area of ground owned for terminal purposes by any one of the great railroad lines coming into this city, and is vastly more than would be needed by the plaintiff corporation if its imaginary line from New Orleans to Chicago were actually built and in operation.

"Respondent denies that plaintiff has the right, under the laws of the state of Louisiana, even if it were a bona fide railway corporation, to expropriate land for which it has no present use, and which it does not intend at present to use for railroad purposes, but which it proposes to acquire now and hold, because property is now cheap, in order to resell at a profit hereafter, or to hold for its use and needs hereafter.

"Respondent shows that the plaintiff corporation herein seems to be the successor and enlargement of a certain defunct warehousing corporation lately known as the New Orleans & Western Railroad Company, which organized under a charter that purported to contemplate and intend a railroad line from New Orleans, La., to Dallas, Texas, which railroad was never built nor attempted to be built, but that in lieu thereof the said New Orleans & Western Railway Company constructed enormous cotton compresses and warehouses and wharves at a place below the city known as Port Chalmette, and went extensively into the business of warehousing, compressing, storing, and shipping cotton, which cotton was transported into said warehouses by a feeder or switch line a few miles in length; that the real purpose of said New Orleans & Western Railway Company was to engage in the business of compressing, storing, and shipping cotton and other commodities: that it never had any idea or purpose of building a railroad into Texas, but pretended such

purpose solely to mask and conceal its true purpose, and to acquire rights from the city of New Orleans, and the right to expropriate private property.

"Respondent shows further that the said New Orleans & Western Railway Company became insolvent in its said warehousing business, and its property was thrown into the hands of a receiver and sold; that the persons who purchased said property are now consolidating their said warehousing property so acquired from said receiver with the plaintiff corporation herein (a fact that indicates that the real object of the present corporation is to continue the warehousing business of said defunct corporation at Port Chalmette), and that the property (including respondent's) which plaintiff wishes to acquire in this city is to be used for such warehouses in order to meet the disastrous competition which said defunct corporation had to engage in with the cotton compresses and other warehouses situated in the city of New Orleans; and respondent avers that such is the true intent and purposes of the plaintiff herein, and that the line of railroad from New Orleans to Chicago spoken of in plaintiff's charter is a mere blind and pretext, and will no more be built than was the line from New Orleans to Dallas, mentioned in the charter of said defunct corporation, the New Orleans & Western Railway Company.

"Respondent further shows that, if the object of the plaintiff corporation is not as above stated, then its object is simply to acquire property in this city suitable for railroad terminal purposes, and then to sell the property so acquired to any railroad that will buy the same at a sufficient advance, and to sell for manufacturing and business sites that portion of the area so acquired which will not be needed for railroad terminals; and respondent denies that the plaintiff herein has any right to expropriate respondent's property for any such speculative purposes.

"Respondent avers that the pretended purposes of the plaintiff corporation, as set forth in its charter, to build a line of railroad from New Orleans to Chicago, is not its true purpose, and is a mere pretext and simulation, the object of which is to give plaintiff the apparent right to expropriate property which it then intends to use for other purposes or for speculative purposes, all of such a nature that plaintiff would not be entitled to exercise for such real purposes the right of expropriation under the laws of the state of Louisiana.

"Fourth. Respondent denies that the plaintiff corporation herein is a real and serious corporation, and avers that it is a mere paper corporation, having possibly a legal form of existence, but no real life, no capital stock, and no assets, and that it is not such a corporation as is authorized by law to institute expropriation proceedings.

"Fifth. Respondent further avers that the property herein sought to be taken is not being taken for public use or for public purposes, but for purposes of private benefit and speculation only.

"Sixth. That the property herein sought to be expropriated is vastly more than would be needed for the terminal purposes of the railway line mentioned in the charter of plaintiff, even if such railway line were actually built and in operation, and is more than would be needed for terminal purposes by such railroad line for the next fifty years; and respondent denies that such corporation is entitled now, even if it were a genuine and bona fide corporation, to expropriate property for which it may never have any use, and for which it will certainly have no use for a great many years to come.

"Seventh. And should the above-stated pleas and defenses be overruled, and should this court hold that plaintiff corporation is entitled to expropriate respondent's property, then respondent avers that her said square is well worth the sum of $12,500."

The learned judge a quo interpreted this answer as attacking the corporate existence of the plaintiff, and, under the doctrine that the corporate existence of a litigant corporation cannot be called in question collaterally, he excluded evidence offered by defendant in support of the allegations of her answer.

But such is not the purport of this answer. While it calls the plaintiff a mere paper corporation, it admits its existence as a corporation. What it denies is that plaintiff is a public utility, or, in other words, a genuine railroad corporation. It charges that plaintiff has assumed the garb of a public utility corporation in order to be enabled under that disguise to expropriate property which it is seeking to obtain for purely private purposes; i. e., to speculate with by reselling to some railroad company or other person at an advanced price, or itself to put to some private use—probably to convert into warehouse or other building sites. In the alternative, it charges that plaintiff should not be permitted to expropriate the property, because plaintiff is not now able and may never be able to put the same to a public use; plaintiff being utterly without the means of building a railroad; plaintiff's entire scheme being, up to the present time, purely speculative.

Surely this is a defense which, if made out, would defeat plaintiff's suit, and which, therefore, defendant was entitled to urge,

and to support by any available relevant evidence.

In the case of Williams v. Judge, 45 La. Ann. 1295, 14 South. 57, this court said:

"Relators have the undeniable right to contest in the courts with the railroad company in question whether its purpose is one of public utility, and whether the use to which it seeks to put relator's property is a public use.

"What constitutes public utility and public purposes is for the courts to determine."

In the case of Edgewood Railroad Company, 79 Pa. 257, the Supreme Court of Pennsylvania said:

"The commonwealth transfers to her citizens her power of eminent domain only when some existing public need is to be supplied, or some present advantage is to be gained. She does not confer it with a view to contingent results which may or may not be produced, and may or may not prove successful or disastrous. * * * The capital of the corporation has been nearly, if not entirely, expended. * * *

"Hardly as the rule may bear on these defendants, it is the plain duty of the courts to prevent the perversion of enactments passed for one purpose in order to subserve other and inconsistent objects."

In the matter of Metropolitan Transit Company, 111 N. Y. 588, 19 N. E. 645, the Court of Appeals of the state of New York held (quoting the syllabus):

"As a condition upon which the court could be asked to intervene in its favor to enable it to acquire lands and street rights, the company was obliged to show, under oath, that it is its intention, * * * in good faith, to construct and finish a railroad from and to the place named in its articles of association. Laws 1850, p. 216, c. 140, § 14.

"In the petition presented by said company for the appointment of commissioners of appraisal to determine the amount to be paid to the city for the use of the streets included in the routes of said company, it was stated that 'it was the intention of said company, in good faith, to construct, operate, and maintain a railroad on the lines mentioned in said act.' The city answered—among other things, denying that it was the intention of the company to construct and operate a road as mentioned in said act of 1872. On the hearing, after the company had offered evidence on the question of intent, the city offered evidence to contradict it and to controvert the expressed intent. This was excluded, the court holding that the application was sufficient proof of the intent. Held error.

"It seems that if it had not been alleged in the petition, and put in issue by the answer, that the company in good faith intended to build the road, proof that it did not intend would have been proper, and would have shown 'cause against the granting of the petition.' Laws 1850, p. 218, c. 140, § 15."

In the same connection the following cases are apposite: Pittsburgh, W. & K. Co. v. Benwood Ironworks et al. (W. Va.) 8 S. E. 453, 2 L. R. A. 680; B., W. & N. Railway, 72 N. Y. 245; Niagara Falls & Whirlpool R. Co., 108 N. Y. 375, 15 N. E. 429; Weidenfeld v. Sugar Run Ry. Co. (C. C.) 48 Fed. 615, 618; Matter of Deansville Cemetery Ass'n, 66 N. Y. 569, 23 Am. Rep. 86; Matter of Staten Island Rapid Transit Co., 103 N. Y. 251, 8 N. E. 548; Denver v. Union Pac. Ry. Co. (C. C.) 34 Fed. 386.

In the above cases the plaintiff corporations had been organized as railroad corporations, but nevertheless the defendant property owners were permitted to raise the question of whether the property was to be put by the plaintiffs to a public use.

But there ought not to be any need of citation of authority on a proposition so plain. Because a corporation is organized as a railroad corporation, and says · in its petition that it wants the property for a public purpose, it does not follow that the property is not sought to be taken for a private purpose. What men say in their notarial acts and in their petitions is not always true. It is none of the business of the defendant property owner in an expropriation suit to inquire into the purposes for which the plaintiff corporation has been organized. That is the business of the state. But it is his business, and, in a sense, nobody else's, whether the purpose for which the property is sought to be expropriated is a public purpose. Therefore, in defense to the expropriation suit, he can, as a matter of course, raise the question as to whether the purpose of the taking is public. Whatever may be the reasons why, in his opinion, the purpose is not public, he has the constitutional right to urge them and to prove them, and

to have the courts pass upon their sufficiency.

Of this Constitution-given right the Legislature would be powerless to deprive him.

The excluded evidence was the following:

While the president of the plaintiff corporation was on the stand, defendant's counsel propounded to him the following questions, to wit:

"(1) Where does the New Orleans Terminal Company deposit its money?

"(2) How much of the capital stock of the corporation has been paid in?

"(3) How much of the capital stock has been subscribed for?

"(4) Does this corporation pay for what it buys with its own money?

"(5) What surveyors, if any, has the New Orleans Terminal Company employed for the purpose of running lines?

"(6) What workmen, if any, have been employed by the New Orleans Terminal Company to lay out and construct tracks and terminals in the city of New Orleans?

"(7) What work, if any, has been done by the New Orleans Terminal Company along the line of building any kind of railroad from New Orleans to Chicago?

"(8) What rolling stock, if any, has been purchased or owned by the New Orleans Terminal Company?

"(9) What books of account, if any, does the New Orleans Terminal Company keep?

"(10) What resources has the New Orleans Terminal Company to pay for these properties [i. e., properties in the vicinity of the property to be expropriated, testified by the witness as having been bought by the St. Louis & San Francisco Railroad Company in the name of L. L. Stanton, with the object and purpose of transferring them to the New Orleans Terminal Company]?"

Defendant put on the stand one of plaintiff's counsel, and propounded to him the following questions, to wit:

"(1) Is it not true that you are one of the subscribers to the stock of the New Orleans Terminal Company?

"(2) How much stock do you hold in the New Orleans Terminal Company?

"(3) Has the stock that you own in this company been paid for, and, if so, in what manner?

"(4) How much stock of the New Orleans Terminal Company has been subscribed for?

"(5) How much stock of this railroad company that has been subscribed for has been paid for?

"(6) Did the New Orleans Terminal Company pay for those surveys [i. e., those made of the proposed line from Memphis to New Orleans, previously stated by the witness to have been made for its benefit]?

"(7) Does the company keep any ledger, journal, cashbook, or bank deposit?

"(8) Was the railroad of the New Orleans & Western Road ever built to Dallas?"

These questions were objected to on two grounds, both of which were sustained:

"First. That the questions were irrelevant to and did not tend to prove any issue in the case.

"Second. That, if the object in asking the questions was in support of that part of defendant's answer which attacked the existence of the plaintiff corporation collaterally, then the evidence was not admissible."

The second of these grounds has already been disposed of hereinabove. The first ground was equally untenable. The questions are certainly relevant.

Assuming that to the first question the answer would have been that the plaintiff deposited its money nowhere, because it had none; and the answer to the second and to the third, that none of the plaintiff's stock had been paid in or even subscribed for; to the fourth, that the plaintiff does not pay with its own money for what it buys; to the fifth, sixth, and seventh, that no surveyors had been employed for running lines, nor workmen employed to lay out and construct tracks and terminals in the city of New Orleans, and no work done by plaintiff towards building any kind of railroad; to the eighth, that no rolling stock has been purchased; to the ninth, that no books of account are kept, except a minute book and a stock subscription book; and finally, to the tenth, that the plaintiff has no resources to pay for the properties it is seeking to expropriate—assuming that these answers would have been given, they assuredly would have gone some way towards substantiating the allegations. They were therefore relevant.

Whether they would of themselves, and without further evidence, have proved the allegations of the answer, is another question, and one which is not now before this court for decision.

What has been said regarding the questions propounded to the president of plaintiff is equally applicable to the questions propounded to its counsel.

Plaintiff objects to the sufficiency of the bill of exceptions by which the ruling of the court upon the admission of the above evidence is brought up for review. The bill shows that the questions were asked and were objected to on the grounds that they were a collateral attack upon the organization of the plaintiff corporation, and moreover were in themselves irrelevant, and that the court sustained the objection and ruled out the evidence. For our part, we cannot imagine what more could have been stated. Plaintiff's learned counsel says that defendant should have stated what answers were expected by the witness. This would have been necessary if the questions had not themselves furnished sufficient information to enable the court to pass intelligently upon the matter.

It is therefore ordered, adjudged, and decreed, that the judgment appealed from be set aside, and the case remanded for further trial; plaintiff to pay the costs of this appeal, and the costs of the lower court to abide the final decision of the case.