BREAUX, C. J.
Plaintiff brought this action against the defendant for the expropriation of land fully described in its petition. The land is necessary, as it alleged, for accomplishing the object for which the railroad company was organized. It represents that it needs additional space to lay tracks at Shriever and to enlarge its embankment, also space to improve the means of access to its tracks and depots, and further space to be utilized in other needed drains along its railroad embankment.
This is the second appeal between plaintiff and defendant. In the first appeal, judgment was for plaintiff, decreeing plaintiff entitled to certain servitudes at and near Shriever Junction, and generally “for the use of its railroad across defendant’s plantation,” including “the ditches along the railroad embankment,” including “the turntable, embankment, and space on which its machinery was,” and “including the inner and outer slope of the ditches,” also over the section house and over the space between the two depots occupied as a flower garden; and recognizing the railroad company as owner of the space expropriated for the right of way of the Houma Branch Railroad; decreeing the plaintiff company the owner of the land over which the servitude extends and to be in possession of all the other spaces included in the first suit.
On rehearing, the matter of drainage received further attention, and its extent and nature were particularly defined. We are particular in referring to drainage by reason of the fact that in the case before us for decision there is some difference of view in regard to the interpretation of the first decree rendered, which will be considered later. See John T. Moore Planting Company v. Morgan’s La. & Texas R. R. Co. (No. 17,026) 126 La. 840, 53 South. 22.
The defendant filed an exception to plaintiff’s suit on the ground that no copy of the map referred to in plaintiff’s petition in this present suit was served on defendant; and defendant filed another exception on the ground of vagueness and that plaintiff had not alleged the object in seeking to expropriate defendant’s property, and the use plaintiff intended to make of the land. The exceptions having been overruled in the district court, the exceptions will be considered hereafter.
Afterward the court appointed three commissioners — one selected by plaintiff, another by defendant, and the third by the court. The district court in its reasons for judgment made mention of the commissioners at some length, as highly qualified and equipped to compose the commission. They owned land near Shriever. They were among the most prominent and best citizens of the state. One was Col. W. H. Price, owner and manager of large interests; the other was Senator Shaffer, also owner of large areas of land and a highly successful planter. Air. Shaffer was the cashier of the Bank of Thibodeaux, interested in sugar property near Shriever, and all citizens of unquestioned integrity and ability, impartiality, and well versed in the value of property.
These commissioners held their 'sessions at Shriever and heard a number of witnesses, and made a report of their finding, which was approved by the court.
At this point, defendant answered plain *81 tiff’s petition. Defendant in the answer controverted the grounds alleged in the answer, and specifically alleged that there was no necessity on the part of plaintiff to expropriate defendant’s land; and further alleged that it has no use for the land, no interest to serve; that the drainage proposed is ill advised, unwarranted, and unjustifiable and was calculated to injure respondent without plaintiff subserving its own interest. In the alternative, if the court decides for plaintiff, then, in the answer as to the value of the property, defendant claims $47,669, as set forth in different sums, aggregating that amount.
We have sufficiently stated the pleas as set forth in the pleadings.
The following is a summary of the facts: The civil engineer by whom the survey was made of land plaintiff seeks to expropriate, and whose plat of survey was filed in evidence, was heard by the commissioners as a witness. His testimony and that of other witnesses furnished the information necessary to identify the different tracts of land.
The second witness for plaintiff had been in the sugar planting business about 35 years, and had been manager of Wauban plantation for about nine years, and is a successful planter. He thought that about $150 an acre would be an average price for plantation property, and that the land beyond the cultivable lands on Wauban plantation are worth about one-half that amount. He thought that $1,250 would pay for the damage of passing through the field and the obstruction at crossings.
The superintendent of the plaintiff road, E. E. Shackford, testified: That the land is necessary in particular places for additional tracks; in other places for improved drainage owing to the widening of the banks and in strengthening them; and in other places around the depot to get to the depot and to receive and handle baggage, express, and passenger traffic. That the tract described in the petition under No. 1, on the east end of the plantation, is necessary for the construction of a second or double track, required for the exigencies of the railroad and public business. That the next tract described in the petition and colored yellow on the map, which begins on the west side of the public road and extends to-the west end of the plantation on the north side of the railroad, also tract No. 1, a continuation of tract marked 2, were to be used in the alteration of the switch. That there is not sufficient berm at present; that is to say, no fiat line between the toe of the slope or to the edge of the ditch, as there should be, and that that is also another reason for seeking a judgment of expropriation.
He mentioned other particulars in connection with these improvements and other facts as a reason for the suits, such as a team-track in the yard at Shriever; that five or six cars length are necessary, where teams could get to the cars to unload the contents that there is no place for a car load of lumber or coal or a car load of furniture to be-delivered into wagons, unless placed in front of the depot platform and carried through the warehouse.
“It would be a rather difficult and ridiculous way of handling- freight.”
He also said that there was a heavier tonnage of freight of late years. The engines were larger — twice as large now, and the-weight twice as great.
In reference to the land described in No. 3, he said that it was absolutely necessary for entrance and exit and the only public road in the vicinity to get to and from the depot. About one of the buildings which the-defendant had moved, he said that it had' been moved on the land sought to be expropriated after the suit had been brought, and that defendant company knew that they *83 would require the expropriation of that land before the building was constructed.
Unless the officers of the road are not telling the truth — and that we will not assume —the railroad needs the property. It will be borne in mind that these witnesses stated to the commission and in presence of other witnesses and the bystanders that the railroad could not properly handle the freight and transfer passengers, and that the commission was in session several days.
The fourth of plaintiff’s witnesses was a planter residing near Morgan City, who had bought and sold land. He fixed the value of the swamp land, part of which plaintiff sought to expropriate, at $5 or $6 an acre, and he thought that the land near by and near the embankment was worth about the same amount. Also the land spoken of as the barrow pit lands. These last lands had been spaded out. Eor cultivation, they would have to be filled, which would be expensive. The barrow pit and other lands, which plaintiff seeks to expropriate, are about on a level with the swamp; that is, about seven feet below the surface.
The land in Shriever, to which his attention was called, he valued at $250 an acre, and valued cane lands at $150 an acre, which was the price at which he fixed the agricultural lands of the plaintiff, except those near the swamp, which he valued at $20 an acre, and the swamp land at, $8. The land for ditching he valued at $50 an acre, and, returning to Shriever, he said that lots there were worth about $100 each. He saw no prospect at that place (Shriever) for a lumber yard, or for a storage plant, or for a wholesale grocery; that it would probably offer some inducement for a retail grocery. 1-Ie also stated that lands along the. embankment were not in the best condition; that there are milk weeds there and Johnson grass.
The fifth witness for plaintiff was also a sugar planter of many years experience, who had bought and sold lands. The land west of Shriever he estimated as worth about $125 per acre. This witness must have been partial to cane fields, for he was decidedly of the opinion that Shriever would not lose by being converted into a cane field. He said there is a grocery store in the place, a saloon, hotel, restaurant, and a fruit stand. There had been a drug store and there is a livery stable. The drug store was closed temporarily for all we know. The timber lands of defendant he valued at $10 an acre; also the swamp lands and the barrow pit lands.
The sixth witness for plaintiff was a real estate agent and notary public. He spoke of $150 as a fair value for agricultural lands ; was not very familiar with land values in Shriever. Subsequently, in testifying, he spoke of lots in Shriever as worth from $500 to $1,000, provided they were easily accessible. When told that they were not, he answered that they were of very little value.
The mayor of Morgan City, who is a lawyer, was the next witness. He had no practical experience. He had frequently conversed with his clients and others about the value of sugar plantations, and thought that $100 to $150 an acre was a fair .valuation. The swamp lands he valued at $5, and the lands on which the ditches were he considered of very little value. On a strip of land immediately between the embankments on the south side of the track he placed a value of $250. He had frequently stopped at Shriever on his way to Houma and had never noticed any improvement; does not seem to have been impressed with the land as of particular value. He spoke of Shriever now as being what it was many years ago. He insisted that he would make no deductions in regard to the market value of lands *85 •simply because some one bad paid a hand.some price for a particular lot. This referred to the purchase in the town of Shriev- • er of a lot of land by a Mr. Toups for a very considerable price.
The eighth witness who testified for plaintiff agreed in the main with those who had .■previously testified.
The right of way agent of the Morgan 'road, Mr. R. C. Watkins, who in that capacity had charge of the company’s lands and -also charge of the construction of tracks, the public highway, and railroad crossings, testified that he, as the representative of the road, had used every effort that he could 'think of to buy the land from the defendant, and specified different attempts he had made to purchase the land; but all in vain. The purpose, he swore, is to build a second main track through the Wauban plantation of ■standard construction, with a roadbed having a slope of 1 vertical foot to 1% feet horizontal, so that, of the 14 feet between track ■centers, there will be 9 feet for slope of embankments, from 5 to 8 feet for the berm, ■and the remainder for drainage purposes and operation of the block signal line, consisting •of a line of telegraph wires.
There will, this witness says, be in the •near future a new main track over the right •of way. This is referred to in order to add that, according to the officers who have testified as the representatives of the defendant ¿company, within a reasonable time it is proposed to improve the track as stated in the ■testimony of witnesses.
Several other witnesses testified in regard to the value of property, and their testimony did not vary very much from that of the -witnesses to whom reference has heretofore been made.
Now as to defendant’s testimony:
The first witness on behalf of the defendant was the vice president, Mr. Chas. V. Moore. He testified about rents and the different amounts collected as rental, upon which he based value of the property. For instance, a lot and store thereon, in Shriever, he swore that it brought an income of $1,800 per year at one time, and, at the date of the trial, $1,500 per year. That that rental represented a value of $15,000 a year at 10 per cent. He valued the property at $10,700. The nest building which brings the highest rent was the hotel, restaurant, and stable, with the residence near the stable. The hotel and dormitory he estimated at $1,300, the restaurant and residence at $1,800, and the stable at $600. The rental collected on this property is $600 per year — a capital of $6,000 at 10 per cent.
The refreshment stand he valued at $500. The barber shop, because of the rental collected, he valued at $122. A residence across the bayou, at $350. He testified that he had an offer of $5,000 for the ground covered by the store. He said that the land in Shriever had other than agricultural value; that they have demands constantly for residences, but, for sentimental reasons, they have not parted with any land, although applications have been made to buy from them; that, with the opening of Bayou Terrebonne, lands will continue to increase in value; that a drainage district has been formed and contracts let for the dredging of the bayou; and that several miles had already been dredged. He stated that Shriever would be a pretty good wholesale center and distribution point in time, especially if Bayou Terrebonne be opened.
Witness stated that it was absolutely necessary to keep up the drainage along the railroad embankment. He agreed with other witnesses for defendant in regard to the value of agricultural land of Wauban plantation; that is, from $150 to $200 an acre.
Another important witness was Mr. Toups, *87 wlio hought a small lot in 1896 from defendant for $800. Having acquired standing room in the town of Shriever, he testified he had been reasonably successful since. The purchase was an advantageous one to him and one which he did not regret. We conclude, as to this last property, this purchase can hardly be said to be a criterion of value in the town of Shriever.
The secretary of the company, in the main, corroborated the testimony of the vice president. He did not testify to anything showing higher value or less value, although his testimony necessarily differs from that of the vice president. No two witnesses testifying as to a number of facts can agree in all the particulars.
• The overseer at this time on Wauban also testified, and as to value he did not very much differ from that of the other witnesses for the defendant.
A witness, who is connected with a lumber and sawmill plant in the town of Houma, Mr. A. T. Gerrans, also was under the impression that the lands at and near Shriever were of considerable value, and corroborated other witnesses for the defendant upon the subject. He said that he had a general knowledge of conditions, and that he at one time thought of locating at Shriever and thought of buying 40 acres of land at or near the Shriever Junction, and that it was his intention to offer a rental of $1,500 or $1,800 a year. He considered lots at Shriever as having value as business property. He was inclined to a high estimate. We do not find it possible to make it the basis of a judgment after having considered all the evidence given on the trial. He, we infer, has seen industry develop and become quite prosperous. It is certainly to be considered in fixing values. None the less, these elements of wealth are not controlling when not sustained throughout and in the face of a large number of witnesses who generally take a less optimistic view. It is all a question of opinion of expert witnesses.
Another witness, Mr. Garland B. Miller,, was even more hopeful as to the prosperity the future has in store for the little town of Shriever. He owned that he was not familiar with local conditions. In short, without for a moment entertaining the least doubt about his earnestness and good intention,, the commission did not agree with him, and neither can we. Although in a very short time he made a study of the resources of the-place and the prospect of its becoming a commercial center, the few hours study he had given to the subject, the great zeal and altruism -which led him to conclude that Shriever is a strategic business point of great importance, destined in the near future to become a considerable commercial town, evidently did not impress the commissioners.
The testimony of all the witnesses was considered by the commission, appointed as-before mentioned. They arrived at the conclusion that the weight of the testimony was-with the plaintiff. They made a report to-the court from which the following is an excerpt:
We find that the rights and servitudes sought, should be expropriated.
Land in Yellow, North Side of Railroad.
No. 1. Land lying east of Thibodeaux-Houma public road to east end of plantation, comprising 1.02 acres, at $30 per acre............$ 30 60'
No. 2 A. Land lying west of above-mentioned road to engineer’s station No. 2906 — 17, 0.43 acres, at $500 per acre........................ 215 00'
No. 2 B. Land lying between engineer’s station 2906 — 17 and engineer’s station 2Ó26 — 00, 0.9 acres, at $300 per acre................. 270 00-
No. 2 G. Land lying between engineer’s station 2920 — 00 and engineer’s station 2936 — 00, 1.48 acres, at $200 per acre................ 296 00-
No. 2 D. Land lying between engineer’s station 2936 — 00 and engineer’s station 2980 — 00, 1.93 acres, at $150 per acre................. 289 50-
No. 2 E. Land lying between engineer’s station 2980 — 00 and west end of plantation, 2.24 acres, at $30 per acre........................ 67 20<
*89 Land in Yellow, South Side of Railroad.
-No. 5 (Part) Land lying between engineer’s station 2951 — 00 and engineer’s station 2980 — 00, 0.79 acres, at $150 per acre.......... 118 50
No. 5. (Part) Land lying between engineer’s station 2980 — 00 and section house, 1.34 acres, at $30 per acre........................ 40 20
No. 6. Land lying between section house and west end of plantation, 0.22 acres at $30 per acre........ 6 60
No. 3. “X,” triangle fronting the Thibodeaux-Houma public road 0.19, acres (no servitude) see note..... 1,000 00
No. 4. South of and around freight depot, comprising an area of 0.37 acres, at $500 an acre.......... 185 00
(A). Refreshment building. Nothing allowed for moving, which defendant may do at its own costs. The defendant was notified by plaintiff that this land would be expropriated and proceeded to erect the building thereon at its own peril...'.... 0 00
(B). Fruit stand. We have allowed for moving same................. 50 00
(G). Stable. We have allowed for moving same.................... 300 00
(D). Dwelling (cabin). We have allowed for moving same........... 175 00
(E). Family residence. Damage _ to same on account of 'the extra noise, smoke, etc...................... 00 00
(F). Plantation crossings, increased trackage — damage caused by same.. 1,000 00
(G). Road south side of the depot— allowance for damages........... 15 00
(H). Road north side of railroad, north of depot, allowance for damages ........................... 15 00
(I). Sidewalks — damage to same and cost of removal................. 5 00
<J). Increased insurance rates...... 0 00
Land Colored in Brown.
No. 10. Between section house inelosure and ditch in front of same, consisting of .08 acres, at $30 an acre ........................... 2 40
Land Colored in Blue.
No. 11. Land known as “Old Turntable site,” consisting of an area of .08 acres, at $500 an acre.... 40 00
$4,121 00
Note to No. 3:
Inasmuch as the valuation set on No. 3 -seems to be out of proportion to the values set on other properties belonging to defendant company, which are sought to be expropriated, the commission makes the following explanation, to wit: “Tract No. 3 is the only piece or particle of land sought to be expropriated that has a frontage on a public road and which can be approached without the sufferance of the defendant company, with the exception of two small (almost insignificant) tracts of land which have a frontage on the public road,” both of which are incumbered with a servitude of poles and wires.
In the report to the court, the commissioners stated that they found no difficulty in interpreting the Supreme Court • decision in case No. 17,026, and made their finding accordingly. Because of difference of opinion between plaintiff and defendant, they made valuation of the property so as to -meet either view. In case it be as contended by defendant, then they appraised the property to carry out defendant’s theory at $228.60.
The judge of the district court affirmed the report of the commission in a well-prepared opinion, and, as found by the commission, rendered a decree in favor of defendant affirming its finding.
Exceptions.
[1] The exception before noted is now before us for decision. The objection was that the map referred to in the petition should have been served on the defendant. Were the grounds well taken, it would hardly be possible in law to reverse the decision, and remand the cause at this time unless the error was prejudicial. The objection does not commend itself as sufficient to dismiss the suit. The map was filed at the same time with the petition. It may be considered in the nature of a document which need not be served provided it is filed. In New Orleans Terminal Co. v. Teller, 113 La. 735, 37 South. 624, 2 Ann. Cas. 127, the court did not set aside the judgment, for reasons, we think, are controlling.
[2] An exception was filed on the ground of vagueness (we have stated above) in that plaintiff did not state the purpose for which plaintiff sought to expropriate the land. The resolution of the board of directors directed one of the officers of the defendant to institute the suit. • The petition stated the purpose at length and the use it intended to *91 make of the land. It alleged that which can here be expressed in few words. It was to supplement its right of way, its drainage, and to enlarge the station grounds and acquire other needed space. The allegation was sufficiently complete to enable the defendant to meet the issues, and at no time during the trial does it appear that any one concerned was at a loss about the issues because of vagueness in alleging them.
The facts were detailed at length.
The exceptions in our view were properly overruled.
On the Merits.
The Wauban place is one of the large and valuable sugar plantations along the Gulf Coast of southern Louisiana. The lands are fertile and valuable. Shriever, which is stationed on the Morgan Railroad on the plantation, was established years ago. There are few houses within the limits of the town and few inhabitants. The business is not particularly large, but a fair return to those engaged in business is obtained. A few have realized sufficient from their business to branch out and become successful merchants and owners of land.
Shriever, with the exception of one lot, is owned by the defendant, and for sentimental reasons the owners have not been willing to sell any part of the place. As the lands of the plantation enhanced in value, family ties no doubt grew, and the owners were not willing to part with their lands. The refusal to sell lots at the active station at Shriever has had the effect of concentrating the business and of enabling the owners to recover a very fair rental, more in amount than is generally paid in larger towns and even cities.
At first, in the history of the hotly contested litigation, an attempt made by the railroad company to lay a new track was met by an injunction obtained by defendants. Soon thereafter, the railroad company brought suit against the defendants to expropriate the property. In its petition plaintiff averred that it had a right of way across the plantation; that it wished to make' certain improvements and drains and to acquire further facilities for accommodating-passengers and handling freight at Shriever and to put in another track. In the litigation that followed, the plaintiff’s servitude over defendants’ land was defined and" the right between the parties delimited.
In time thereafter, plaintiff brought another suit to supplement the servitude and right which it had across the plantation. That is the suit now before us for decision.
It is urged by the defendants that the-commission was placed at disadvantage by the heat in June and the want of convenience and comfort in Shriever, and that, in. consequence, despite their good will, they could not give the attention to the subject that they would otherwise have given. We-will state here, however true this is, it was-none the less advisable to hold the sessions-on the ground which plaintiff sought to expropriate and within view of the property, which was pointed out to the witnesses at the time that they testified, and which commissioners and witnesses had every opportunity to inspect, and which they did inspect during the trial. The commissioners may have erred in their appreciation of the value-of the property. We have not found erroxsave in very minor particulars. They might have erred at any other place, even though-surrounded by all the comforts and conveniences possible and not subjected to the-hot weather of June. Throughout the trial the commissioners seem to have evinced close-attention and to have intelligently followed, every step in the development of the case.. They overlooked nothing that we have discovered.
As to the finding of the commission, we will state; Appellate courts, unless for man *93 ifest good reason, will not .interfere witli the amount of damages. The most manifest error only will warrant a change. United States v. Dumas, 149 U. S. 282, 13 Sup. Ct. 872, 37 L. Ed. 734.
The following is sustained by repeated decisions: Juries have to some extent the character and authority of experts, supposed to have some personal knowledge of the matters submitted to them, and authorized to act on their own opinion as well as on the testimony adduced before them. Their verdicts are indeed subject to revision by appeal, and may be amended when manifestly inadequate or excessive; but they are entitled to great respect and will not be interfered with except in case of gross and manifest error. Por convenience of reference, we insert a list of decisions: City of Shreveport v. Youree, 114 La. 184, 38 South. 135, 3 Ann. Cas. 300; Kansas City-Shreveport & Gulf R. R. Co. v. Heirs of Smith, 51 La. Ann. 1079, 25 South. 955; Railroad Co. v. Rabasse, 44 La. Ann. 179, 10 South. 708; Railroad Co. v. McNeely, 47 La. Ann. 1299, 17 South. 798; Telegraph-Cable Co. v. Railway Co., 43 La. Ann. 525, 9 South. 119.
Defendant, naturally enough, thinks that the damages were not assessed in a sufficient amount, and therefore complains. The right of complaint should never be denied. If well founded, it should be remedied; if not, there is an end of the controversy. The complaint of the defendant is that too much land was allowed to the plaintiff, and that, if entitled to the servitude claimed, plaintiff was entitled to recover rights and servitudes only inch by inch.
In support of that contention, defendant quotes the decision in Jefferson & Pontchartrain R. R. Co. v. Hazeur, 7 La. Ann. 182. The text of the cited opinion does not sustain the close interpretation which the words “inch by inch” indicate, for the court said in the cited case, in the absence of all proof to the contrary, the district judge correctly considered the land already owned by them as sufficient.
[3] This is entirely different from the case before us for decision. Here the plaintiff, beyond question, needs all the land claimed. We learn from the record that the business of the railroad has very much increased of late years all along the line, and that the business at Shriever also has increased, while the accommodation at and near the depot is one of the poorest, and the track for a considerable distance not what it should be because of the want of space.
The extent of the servitude allowed did not appear excessive to a number of witnesses, but the defendant insists that only 14 feet should have been allowed. After having read the testimony, the thought at once suggests itself that this would reduce the space of the railroad to a small space upon which to construct an additional or double track. The evidence shows that there are berms needed and other space, very important and even necessary, which could not be had if the space reduced to only 14 feet. We are not of the opinion that 14 feet would be sufficient. In this we are sustained by the finding of the commissioners and the evidence of the witnesses.
We leave that subject and take up the question growing out of plaintiff’s claim for a space near the depot (measuring 75x68) and the valuation made. Plaintiff’s contention is that this space is of the greatest importance. The claim was specifically considered and correctly disposed of by the commission. They were within a stone’s throw of the space, saw for themselves, and were able in every way to judge of its necessity vel non and of the value of the property. As relates to this and other strips of land: They must have seen something of the handling of freight and of the movement of passengers while they were hold *95 ing their sessions and had every opportunity to conclude for themselves as to the necessity of the expropriation.
A point of defendant is' that the commission erred because it did not attach sufficient importance to the rental value of some of the property, and the sale of one piece of land, 30x100 feet several years ago. We can say in answer that the rental of a few lots at this time and the sale of one lot years ago are not a fair criterion of value. Taking into account the favorable circumstances, and the fact that they were controlled by defendant (there was no competition) they do not establish the market value.
We pass to the defendant’s objection that the land sought to be expropriated east of the bayou and to the west of engineer’s station 2939 is not needed by plaintiff for a double track. The objection makes it very evident that defendant is very much opposed to the laying of a double track over its plantation. Its contention is that, even if the land be expropriated for a double track, it may not be used for years. In this connection, we will state that, of the 400 miles of tracks of plaintiff company, there are already 40 miles of double track. The railroad proposes, as we learn from the testimony, at as early a date as possible, to construct the new tracks. The subject has been debated among the officers, and everything leads to the inference that it is the determined purpose of the plaintiff to construct this new track. It is not conceivable that it would incur the present expenses and the vexation of litigation unless for the purpose of carrying out a settled plan. Witnesses representing the company swore that such is the determination of the company. There is no room for assuming to the contrary.'
Now as to the strips of land on either side of the track, colored green on the map: There are two ditches in these strips on either side of the track, and plaintiff petitions the court to be permitted to close these two ditches and to open two other drains, parallel to and very near the old ditches, on either side of the tract colored green. The commission found that there was good reason for closing the old ditches and opening others near and along the line of the old.
At this point, the issue is whether the question is substantially closed by the former decree of this court, in which, as before stated, in different words, the court held, to quote from the decree:
“It is now ordered, adjudged, and decreed that there be judgment recognizing the Morgan’s-Louisiana & Texas Railroad & Steamship Company to have a servitude of passage, and, generally, for the use of its railroad across Wauban plantation of the John T. Moore Planting Company, Limited,, and extending the entire width of the space occupied by the railroad embankment of said railroad, across said plantation, down to the toe of said embankment, and including the ditches, their inner and outer slopes along said embankment.”
The position of plaintiff is that the decree is conclusive and final, and that the opinion is no part of the decree. The position of defendant is that it does not convey the meaning that plaintiff seeks to give to it; in short, that it means “using the ditch in all the ways in which it had been using it” — that is, in substance, the complete judgment, or rather that it should be so construed. That, in the light of the court’s opinion, no other reasonable conclusion was possible than that which has just been expressed.
We cannot agree with the latter view. In our opinion the decisions do not sustain the proposition pressed upon our attention. The opinion may give a reasoning which had no part in the decree. The latter governs unless it is ambiguous; and it is not ambiguous.
In Keane v. Fisher, 10 La. Ann. 261, this court held:
“The judgment is free from ambiguity and is conclusive upon the surety. He cannot go behind it to inquire into the reasons upon which it was founded. The reasons for judgment, strictly speaking, form no part of the judgment itself, although they may properly be consult *97 ed to explain an ambiguity. Mercadi No. 38, p. 35.”
Judge Spofford said, among other things:
“But, in no court, with whose jurisprudence -we are conversant, do the reasons for judgment form part of the decree.” West Feliciana R. R. Co. v. Thornton, 12 La. Ann. 736, 68 Am. Dec. 778.
“Reasons form no part of the judgment.” Davidson v. Carroll-Hay & Co., 23 La. Ann. 108; Chaffe & Bro. v. Morgan, 30 La. Ann. 1307.
There are other decisions upon the subject, but these are sufficient to sustain the proposition that the rule stare decisis applies.
Now, as defendant is concluded by the opinion, it has no good ground to object to the filling and closing of its ditches for railroad purposes; nor has it good ground of objection to the transfer of the drain of its land to the ditches on either side. Plaintiff is not compelled to any specific performance; it is the plaintiff that has to open the new ditches, and through them similar drain will exist as heretofore.
Now as to the dwelling house or cabin: The complaint of defendant is that it has been condemned to move this house; that, instead, it is entitled to the price. We think the demand is correct. The evidence is that it is worth about $250. That amount is allowed, and the plaintiff, after payment, will be the owner in absolute right.
Heretofore defendant was allowed .$175 exclusively to move the house or cabin. As by the payment before mentioned it is the owner, it makes a difference of $75 in the total of the judgment.
As to the plank walk, $5 has heretofore been allowed for moving it.
Value of whole walk................$50 00
One-half on defendant’s land.......... 25 00
$25 00
Less amount paid to move it, heretofore allowed, which is now placed to plaintiffs credit; it being made evident that plaintiff is the owner.... 5 00
$20 00
The amount is increased by $20.
There was an agreement between parties in regard to land not fully shown on Exhibit A. This seems to have escaped attention. The agreement was: If the railroad company had to pay anything for the land covered by new earth, measure to be taken to find out just what was covered théreby, and payment will be made on the basis of the valuation fixed for similar land under similar conditions. As the matter is brought up, the decree will reserve the right to carry out the agreement, as it is stated that the agreement will be performed after judgment.
While the difference is small in our opinion regarding our former decree, as herein stated, we have no idea that in law and justice it should be allowed, and therefore, in this respect, we fully agree with the commission.
Plaintiff asks the court’s sanction to close these ditches and utilize the space within the limit of its track and to dig new ditches near the old ditches on the outer edge on either side or near the outer edge; these new ditches to be subject to use in every way, and to the same extent as relates to all concerned, as were the old ditches closed with the court’s sanction.
The necessity for expropriation must be shown, and the statute followed. It was shown in the case under consideration, step by step. There is a right of expropriation. Then the only question here is of adequate compensation.
The commission thought that there was ample compensation. It has not been pointed out wherein they have erred.
As relates to rent and sale of a lot at Shriever:
We do not attach great importance to either. Rent is not always a fair criterion of value; particularly is it the case here, *99 where the property is owned by one owner and there was no competition.
As to the sale, it is attended with facts and circumstances which do not recommend the price of the lot sold as an absolute criterion of value. One sale does not establish the market value of property.
Now as to the ditches: To us it séems that one ditch is as good as another under conditions just the same, and that no one can thwart the attempt to exercise the right of eminent domain, by the declaration, when all conditions have been complied with, “To this ditch on a highway you can go, but no further.”
The commission considered the rights of parties and found that one ditch could be used instead of another, and declined to find other damages than before stated, although, as before stated, they made a report in the alternative so as to include the two theories, one of plaintiff and the one of defendant. They had specially good opportunity to judge whether or not further damages should be assessed. They saw and examined the drains. The difference between plaintiff and defendant, according to the valuation of the commissioners, is $250; that is, if defendant was entitled to an amount for the ditches. We are not of the opinion that they are, and therefore that amount is not allowed.
We pass to another item: A small strip was valued at $200. The right of way agent offered to buy it for $250 at the time that he was endeavoring to settle amicably with the defendants. This offer was declined by defendant. No effect can be given to the offer. It is the policy of the law to favor compromises, and to encourage them.
We will not detail the number of facts connected with the valuation of the property, and those connected with or growing out of the necessity vel non of making the expropriation: The valuation was fairly conducted and fairly made, as to the necessity of the expropriation, it was made evident by the testimony. The use to which the property will be subjected was fully explained, step by step, and is sustained by ample testimony.
In conclusion, it can well be said that the commission performed remarkably well the task assigned to it by the court.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by increasing the amount heretofore allowed to $4,216, with legal interest from time such interest was heretofore allowed. It is further ordered, adjudged, and decreed that plaintiff is the owner of the house or cabin on lands on which plaintiff has acquired a right as before stated, and also owner of that part of the sidewalk on said land. It is further ordered, adjudged, and decreed that the right to recover, under agreement of counsel, certain property be reserved (property in regard to which there is an agreement as to amount, if an amount be due). As amended, the judgment is affirmed on appeal. Costs of appeal to be paid by appellee.
MONROE, J., dissents.