O’NIELL, J.
Plaintiffs appeal from a judgment dismissing their suit on an exception of no cause of action, as to one part of their demand, and a plea of res judicata as to the other part.
The suit was brought against Blacksher as principal, and against J. G. Lawler, J. S. Evans, and P. R. Sandoz, as sureties, on a forthcoming bond given for dissolving an injunction, under article 307 of the Code of Practice. The litigation in which the writ of injunction was issued is explained in the opinion rendered in the cases of Edenborn et al. v. Blacksher et al. and Blacksher v. Leh, 137 La. 894, 69 South. 737.
It appears that Blacksher, defendant in the present suit, sold two plantations, with a lot of mules, horses, and agricultural implements, to R. R. Leh, on terms of credit. Leh sold the property to J. Franklin Schell, who assumed the payment of the unpaid part of the purchase price due by Leh to Blacksher; and Schell sold the property to the Union Irrigation Company, who also assumed the payment of the notes due to Blacksher and secured by mortgage and vendor’s lien on the plantations. Thereafter Schell, who was general manager for the Union Irrigation Company, gave a chattel mortgage on the mules, horses, and agricultural*implements, in favor of Blacksher, to secure the payment of accrued interest on the mortgage notes held by Blacksher. The plaintiffs in the present suit, having been appointed receivers of the Union' Irrigation Company, brought suit against Blacksher to annul the chattel mortgage. Thereupon Blacksher proceeded to foreclose his chattel mortgage, and the mules, horses, and agricultural implements were seized and advertised for sale to pay the debt secured by the chattel mortgage. Whereupon the plaintiffs in the present suit, as receivers of the Union Irrigation Company, filed a supplemental petition in their suit to annul the chattel mortgage, and prayed for and obtained a writ of injunction, arresting the sale of the mules, horses, and agricultural implements. Blacksher then had the writ of injunction dissolved on the forthcoming bond, upon which the present suit is founded, and the mules, horses, and agricultural implements were sold by the sheriff at public auction under Blacksher’s chattel mortgage.
In their original petition, and also in their supplemental petition, in the suit to annul the chattel mortgage, in which suit the present plaintiffs obtained the writ of injunction, they prayed for damages, in the sum of $500 for having been deprived of the use of the mules, horses, and agricultural implements, and in the sum of $500 for attorney’s fees, incurred for resisting the alleged illegal seizure in the litigation. The action of nullity and foreclosure proceedings were consolidated and tried together. Judgment was rendered in the district court in favor of Blacksher, dismissing the suit of the receivers at their cost, and dissolving the writ of injunction, with reservation of Blaeksher’s right to claim damages. On appeal by the receivers, the judgment of the district court was reversed, and judgment was then .rendered in favor of the appellants, annulling the chattel mortgage, decreeing that the mules, horses, and agricultural implements were the property of the Union Irrigation Company, and ordering the same delivered to the receivers, and maintaining and perpetuating the writ of injunction, all at the cost of Blacksher. No reference was made, in the opinion or decree of this court, to the claim of the receivers for damages, either *299 for Laving been deprived of tbe use of tbeir property, or for tbe attorney’s fees incurred in.resisting tbe illegal seizure. Tbe receivers, as appellants from tbe judgment of tbe district court, bad not abandoned their claim for damages; for, in tbeir printed brief filed in this court, they stated that théy confidently maintained that tbe damages had been sustained and should be recovered by them, and that, although they thought the evidence was too meager to support a judgment, their right to sue for damages should be reserved to them. Notwithstanding this argument in support of the demand lor damages, or for reservation of the right to sue for damages, this court did not allow any damages, or reserve to appellants a right to sue for damages. The demand for damages, and the alternative demand for reservation of the right to sue for damages, was therefore tacitly rejected. And upon this tacit rejection of the demand is founded the plea of res judicata, which -was,sustained by the district court in the present suit for damages for attorney’s fees incurred in resisting the illegal seizure under Blacksher’s chattel mortgage.
In the meantime, as we have stated, the mules, horses, and agricultural implements were sold by the sheriff. The proceeds of the sales amounted to $7,204.40. Blacksher himself bought the major part of the property, his total bids amounting to $6,068.90.
When the decree of this court had become final, Blacksher delivered over to one of the attorneys for the receivers the mules, horses, and agricultural implements which had remained in his possession; and the attorney for the receivers gave a receipt for the property, in which it was stipulated that the receivers reserved their right to sue for all damages that had resulted from the seizure and sale in the foreclosure of the chattel mortgage, and from the dissolving of the writ of injunction on bond. Blacksher also paid to the attorney for the receivers in cash $1,601.40, covering the following items, viz.: $1,135.50, being the amount of the proceeds of the sale of property that had been-bid in by parties other than Blacksher; $90, being the value of a mule which had been bought by Blacksher and had died while in his possession; $200, being the pur-
chase price 'of four other animals which Blacksher had bought at the sheriff’s sale and had afterwards sold and was therefore unable to return; and $175.90 being the costs of court incurred in the injunction suit which was decided against Blacksher. The attorney for the receivers gave Blacksher a receipt for the $1,601.40, in which it was again stipulated that the receivers reserved the right to sue Blacksher and the sureties on his bond for all damages that had resulted from the illegal seizure and sale of the property, and from the dissolving of the writ of injunction on bond. Four months after the property was returned and the money paid by Blacksher to the attorney for the receivers, the property was again sold at public auction by the receivers, under an order of court, and the proceeds of the sale amounted to $4,666.65.
In the present suit, plaintiffs claim dann ages in the sum of $2,370.56, for the follow-) ing items, set forth in their petition, viz:
(1) The difference between the $7,201.10 proceeds of the sale made in the foreclosure of Blacksher’s chattel mortgage, and the $6,268.05 eventually collected for the mules horses, and implements; the latter sum being the $1,601.10 paid by Baeksher, plus the $1,666.65 proceeds of the final sale of the mules, horses, and implements........$ 936 35.
(2) Cost of feeding and caring for’the animals during the 1 months from the time they were returned by Blacksher until they were sold by the receivers............. 399 13
(3) Costs of the sale made by the receivers, including advertisement, appraisers’ fees, notary’s fee, auctioner’s commission (and $5 premium on bond,- as to which no explanation is given)........................ 285 08:
(1) Attorney’s fees incurred in the suit to arrest the Blaclcshear foreclosure and to restore the property to the Union Irrigation Company .............................. 750 00
Total $2,370 56.
*301 [1] The exception of no cause of action is directed at the fact that the charges numbered 1, 2, and 3, in the above classification, are not expenses or losses for which the defendants can be held liable.
The obligation of the forthcoming bond, according to article 307 of the Code of Practice, was that the defendant in the injunction suit would return or deliver the property-in- dispute in the same state or condition in which it. was when the injunction was issued, and would also pay to the plaintiffs in the suit all damages eventually sustained by them, by the act of dissolving the injunction, if judgment should ultimately be rendered against the defendant in the suit.
The first item charged in the above statement is the result of charging Blacksher for the $7,204.40 proceeds of the sale made,in the foreclosure of his chattel mortgage, and crediting him for the $1,601.40 paid by him to one of the attorneys for the receivers, and also for the $4,666.65 proceeds of the subsequent sale of the property returned by Blacksher. With regard to that charge, of $936.35, it is said in a supplemental brief filed on behalf of appellants:
“It seems that what was in the mind of the parties at the time the agreement was made was that the receivers were willing to accept the amount of money which Blacksher received for the property at sheriff’s sale. Blacksher, it seems, was not willing to pay the amount, very correctly so from his viewpoint, as the animals and implements were not worth what they were at the time he received them; and therefore the receivers agreed, without prejudice, to receive back the mules and implements that could be delivered, and receive payment for those that could not be delivered, reserving the right to launch this suit to recover the difference in the value of the animals at the time Blacksher received them and at the time that they were returned to the receivers. Certainly, a plea of no cause of action could not be sustained to such a demand.”
We would agree with counsel that the.plea of no cause of action would not be a good defense to this demand if it were alleged in the petition that the property was not in as good condition at the time it was returned by Blacksher as it was at the time the writ of injunction was issued. The primary obligation of' the bond was that the property would be returned in the same state or condition in vvhich it was when the injunction was issued. But it is not alleged that the property, when returned by Blacksher, was not in the same state or condition in which it was when the injunction issued. It may be that Blacksher’s inability to return all of the property that had been released . on bond would have been a legal cause for a refusal on the part of the receivers to accept the part of the property that Blacksher offered to return. But it does not appear, from the allegations of the petition or from any of the documents referred to therein, that the receivers preferred, or were willing, to accept the $7,204.40 which' Blacksher had received as the proceeds of the first sale of the property. Nor does it appear that Blacksher objected, or expressed a reluctance, to pay that amount to the receivers. As far as the two receipts given by the attorney for the receivers show, the return of the remaining property, and the payment made for what could, not be returned, was mutually satisfactory, as far as it went, and left nothing for future settlement or adjustment except the question of liability of Blacksher and his sureties for such damages as might be recoverable under article 307 of the Code of Practice. The only complaint made in the petition, with regard to the condition or value of the property when returned by Blacksher, is that the price for which it was sold by the receivers at public auction, four months after it had been returned by Blacksher, was less than the price for which it had been sold at public auction in the foreclosure of Blacksher’s chattel mortgage. But that is not a criterion, or reliable indication that the prop *303 erty was not as valuable or in as good condition when Blacksber returned it to tbe receivers as when tbe injunction was issued. Tbe deterioration in value, if in fact there was a deterioration, might have occurred during tbe four months between tbe time of tbe return and tbe time of tbe receiver’s sale of tbe property. Tbe fact that tbe animals and implements were older when Blacksber returned them is not a sure criterion of tbeir comparative value. And in that connection it must be observed that appellants do not allege that they themselves intended to sell tbe property at the time when Blacksber interfered by foreclosing bis chattel mortgage. Tbe fact alone that tbe price for which tbe property was sold at public auction, four months after it bad been returned by Blacksber to tbe receivers, was $936.35 less than tbe price for which it bad been sold at public auction in tbe foreclosure of Blacksber’s chattel mortgage is not a valid cause of action on tbe part of the receivers to recover from Blacksber, or tbe sureties on bis bond, tbe difference of $936.35, or any part of it.
Referring to tbe second class of items charged on tbe account, it is sufficient to say that no satisfactory reason has been given, or occurs to us, for charging Blacksber, or tbe sureties on bis bond, for tbe expense of feeding and caring for tbe animals after they were returned by Blacksber to tbe receivers.
Referring to tbe third class of items charged on tbe account, that is, tbe costs of tbe sale made by tbe receivers, it is sufficient to say that it is not alleged in tbe petition, nor suggested in argument, that these costs would not have been, incurred, or would have been less in amount, if Blacksber bad not interfered, and if therefore tbe sale bad been made at an earlier date.
Tbe only remaining question is the question of defendants’ liability for the fees of tbe attorneys employed by tbe receivers in tbe injunction suit to arrest Blacksber’s foreclosure of bis chattel mortgage and to restore tbe property to tbe Union Irrigation Company. As to that demand, tbe district judge upheld defendants’ plea of res judicata. Of course tbe sureties on tbe forthcoming bond cannot be held liable for that expense unless tbe principal on tbe bond is liable. As to him, the previous suit of tbe receivers, in which they sought to recover tbe attorney’s fees, was between tbe sam^ parties; and it was for tbe same thing, and was founded upon tbe same cause of action. Tbe original petition of tbe plaintiffs in tbe injunction suit, who are tbe plaintiffs and appellants in tbe present suit, contained tbe following prayer for damages, viz.: '
“And petitioners further pray that they have judgment against the said Blacksher in the following sums for damages caused by his illegal detention, seizure, and attempt to sell said property: Eirst, for, deprivation of the use -of the said movable property, $500; second, for) attorney’s fees necessarily incurred in the saja litigation which plaintiffs were put to, to obtain possession of the said property, $500.00.”
Tbe demand was repeated in tbe supplemental petition of tbe plaintiffs, as follows:
“And petitioners further pray that, upon the trial of this suit, they be given damages for the sum of 'one thousand dollars, as follows: $500 for the illegal seizure and detention of the property and the deprivation of the use of it to petitioners, and the additional sum of $500 for attorney’s fees for resisting the illegal seizure herein.”
Tbe demand of tbe plaintiffs in tbe injunction suit was rejected and tbe writ of injunction was dissolved by tbe judgment of tbe district court. They' appealed to ibis court, and in .tbeir printed brief maintained that they bad sustained tbe damages claimed in tbeir petition, and that, although they thought tbe evidence on tbe subject was “too meager for an adjudication,” tbe right to sue for such damages as they bad suffered *305 should be reserved to them. The decree of this court was as follows, viz.:
“It is therefore ordered that the judgment below be reversed, and'it is now ordered that there be judgment in favor of the plaintiffs, joint receivers, decreeing that the movables described in the petition are the property of the Union Irrigation Company, and that said receivers be put in possession of the same; and it is further ordered that the injunction sued out by the said plaintiffs be maintained and perpetuated, and that the defendant Blacksher pay costs in both courts.”
[2] Therefore appellants’ demand for damages, including their demand for reimbursement of the attorney’s fees, and their demand for reservation of the right to sue thereafter for damages, including the attorney’s fees, was tacitly rejected. It is too well settled to admit of much discussion that the legal effect of the silence of a judgment upon any part of a demand that might have been allowed under the pleadings is a rejection of that part of the demand; and such tacit rejection has the force and effect of res judicata against a subsequent suit for that part of the demand. Delahaye v. Pellerin, 2 Mart. (O. S.) 142; Saul v. His Creditors, 7 Mart. (.N. S.) 439; Vascocu’s Widow v. Pavie, 14 La. 139 ; Plieque Lebeau v. Perret, 19 La. 324; McMicken v. Morgan, 9 La. Ami. 209; Rice v. Garrett, 12 La. Ann. 755; Spencer v. Banister, 12 La. Ann. 766; Brady v. Ascension Parish, 26 La. Ann. 321; Villars v. Faivre, 36 La. Ann. 398; Cameron v. Lane, 36 La. Ann. 722; Shakspeare, Smith & Co. v. Ware, 38 La. Ann. 573; Rauxet v. Rauxet, 38 La. Ann. 669.
The doctrine stated in the syllabus of the opinion in Rice v. Garrett, supra, is the converse of the proposition before us, but is very appropriate, viz.:
“Where the defendant in an injunction suit prays in his answer for dam'ages against the principal and sureties, and the judgment dissolving the injunction is silent on the subject of damages, it is equivalent to a rejection of the claim for damages, and the judgment is res judicata between the parties.”
The syllabus of the opinion in Spencer v. Banister, supra, suits the ease before us exactly, viz.:
“Where in a suit to enjoin a seizure of property- as illegal and to recover damages, the judgment maintaining the injunction is silent as to damages, it is equivalent to a rejection of the claim for damages, and will sustain the plea of res judicata in a subsequent suit for damages.”
In Spencer’s Case, he prayed for only $500 damages in his petition in the injunction suit, and prayed for $3,000 damages in the subsequent suit. The. court said that the difference in the amount claimed was a matter of no importance, because the cause of action in both suits was the same — the illegal seizure.
Appellants’ counsel argue that the ques-' tion of damages or liability for attorney’s fees was not at issue in the injunction suit, because, although the demand was made in the prayer of the petition, the cause of action for that demand was not stated in the petition, in a separate article or paragraph, as required by the statute on the subject of pleading and practice. Act 300 of 1914. Our answer is that the facts pertaining to the litigation in which the liability for attorney’s fees is said to have been incurred were recited in the supplemental petition in the injunction suit. It does not appear that there was a ruling by the court, or complaint by any of the litigants in the injunction suit, that the allegations of the petition were not sufficiently specific on the subject of the demand for damages or for attorney’s fees.
.Appellants’ counsel cite an expression in the syllabus of the opinion delivered in Thompson v. Mylne, 4 La. Ann. 206, to the effect that a judgment which does not contain the reasons on which it is founded cannot have the force or effect of res judi *307 cata. The doctrine thus stated in the syllabus was not the basis of the decision, and seems entirely apart from the opinion rendered in the case. The only ruling made on the subject of res judicata was that a mere statement of a legal proposition in a judicial opinion, without any decree in accordance therewith, could not have the force or effect of res judicata. It was with reference to that doctrine only that the decision was cited with approval in Pepper v. Dunlap, 5 La. Ann. 202, and in Davis v. Millaudon, 17 La. Ann. 104, 87 Am. Dec. 517, Pepper v. Dunlap was cited in Police Jury of Lafourche Parish v. Police Jury of Terrebonne Parish, 48 La. Ann. 1301, 20 South. 710, as sustaining the doctrine that the reasons for a judgment are not essentially a part of the decree. That principle is well established in the jurisprudence of this court and is not the converse, but a plain denial, of the proposition on which appellants in this case seek to avoid the force and effect of res judicata.
The judgment appealed from is affirmed at appellants’ cost.