## BOARD OF COM'RS FOR BURAS LEVEE DIST. et al. v. COCKRELL.
### No. 8386.

Circuit Court of Appeals, Fifth Circuit.

July 3, 1937.

Rehearing Denied Aug. 26, 1937.

413

A. Giffen Levy and L. H. Perez, both of New Orleans, La., for appellants.

Sidney L. Herold, of Shreveport, La., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Under the jurisdiction given by the Act of June 14, 1934, Jud.Code, § 274d, 28 U. S.C.A. § 400, the appellee Ernest Cockrell obtained in the District Court a declaratory decree against the Board of Commissioners of Buras Levee District, and against Parish of Plaquemines as their universal successor, that a former decree rendered by the Supreme Court of Louisiana in a suit to which Cockrell and the board were parties is a complete and conclusive bar to any claim by the Levee District of title to or interest in any portion of the land except section 16) in three named townships in the parish and estops them from disputing the ownership by Cockrell of all the rights reserved to him in a certain conveyance in all said lands. The assignments of error on this appeal assert that the bill should have been dismissed, and that, if retained, the former decree of the Supreme Court should be held to affect the title of no land but that which was there sued for.

We greatly doubt whether an "actual controversy" is shown either by the pleadings or the evidence such as gives the court jurisdiction to render a declaratory decree. The act does not alter the character of the controversies which are the subject of the federal judicial power under the Constitution. United States v. West Virginia, 295 U.S. 463, 464, 55 S.Ct. 789, 79 L.Ed. 1546. General contentions between the parties which have not become a definite and concrete controversy will not suffice. Ashwander v. Tenn. Valley Authority, 297 U.S. 288, 289, 56 S. Ct. 466, 80 L.Ed. 688. There seems to be

414

here only a difference of opinion as to the scope of a former decree as it may affect possible controversies which may develop in the future over unascertained tracts· of land. But since neither party attacks the District Court's finding that there is an actual controversy, and since relief might have been had by a bill to quiet title, we will review the merits of the case.

The record culminating in the former decree shows the following: In 1931 the Board of Commissioners· of Buras Levee District in a court of Louisiana sued Cockrell and others for "the following described lands. situated within the limits of Plaquemines Parish, towit, in Township 20 South, Range 26 East, Section 11, 427 acres; Section 12, 632 acres; Section 13, 77 acres.; the above estimated area is in accordance with lands appearing on the Allen E. Washburn, C. E., map compiled in November, 1925, making proper allowances for navigable water areas and for lands in the above sections previously patented and conveyed by the State; all as more particularly shown by certified extract of said Act annexed hereto and made a part hereof, and a copy of said map by Washburn, C. E." The act annexed was a grant from the state made in 1928 and was set up as the source of the title. The prayers were for a judgment establishing title and recovering possession, and for a sequestration of oil ·taken from the land, and for injunction. Cockrell's answer denied the validity of Washburn's survey, and claimed that all the land of the Levee District not only in township 20 south, range 26 east, but in township 18 south, range 25 east, township 19 south, range 26 east, and township 20 south, range 27 east, had in 1919 been conveyed by the Levee District to one Jordan, warranted to be 52,506.52 acres, and that title had later passed to him and the other defendants as set forth; he denied that the Levee District owned any land in township 20 south, range 26 east, or that in controversy; and he asserted that it was the intention of the Levee Board in 1919 to sell, and of Jordan to buy, all of the lands owned by the board in township 20 south, range 26 east, and if the description did not describe the property in controversy that the deeds should be reformed to express the intention to convey all the lands of the board in that township. His prayers were "that plaintiff's demands be rejected," and "in the alternative that the acts

of sale be reformed and corrected to recite the intention of the parties to convey all the lands then owned by said Board in Township 20 South, Range 26 East, and plaintiff's demands be then rejected." The lower court decreed in favor of the Levee Board, but on appeal to the Supreme Court the decree rendered was: "For the reasons assigned, the judgment appealed from is reversed and set aside, and it is now ordered that the writs of sequestration and injunction sued out herein be dissolved, that plaintiff's demands be rejected, and that its suit be dismissed at its costs in both courts." The reasons assigned constitute a lengthy opinion, reported in Board of Com'rs v. Mt. Forest Fur Farms, 178 La. 696, 152 So. 497, 504. This opinion states fully the legal and other history and the details of the situation. It suffices here to say that the land dealt with is low, marshy land along the Mississippi River near the Gulf of Mexico which had never been actually surveyed until recently, much of the area being bays, lakes, and bayous. In surveying other townships to the south of this nearly a century ago, their north line, as it now appears, was located three miles too far to the north, so that only nine miles from north to south instead of twelve miles was left for the double row of townships now under discussion. Pursuant to legislation establishing Buras Levee District, the state in 1914 granted to the district approximate acreages in each of the sections in three of the unsurveyed townships, to wit, township 19 south, range 26 east, and township 20 south, range 26 east adjoining the former on the south, and township 20 south, range 27 east adjoining the latter on the east, reserving section 16 in each for schools. The acreages purporting to be conveyed in the sections ranged from 640 down to none. The grant referred to no map, but there was in the· state archives a map made by one Payne, an engineer of the United States, but not from an actual survey but from an inspection of the land and from other maps. He, supposing the townships to be of full size, platted them as containing each 36 sections one mile square, and drew the land and water lines on that background. This map was approved by the Governor of Louisiana in 1912, and filed in the State Land Office. The land acreage shown in each section by Payne's map is the same as that conveyed in the state's grant in 1914. In 1919 the Levee District sold its lands at public

auction through the sheriff, and since the law required it to be sold by quarter sections the sheriff's adjudication of the sale recites that it was thus sold, and his certificate shows the sale of an approximate acreage in each quarter section, all at a price of 50 cents per acre. The total acreage sold in the quarter sections of each section aggregates the acreage granted in that section by the state, but there is no express reference made either to the state's grant or to Payne's map. For example, the adjudication of the sales in one section reads thus: "Buras Levee Board land in Township 18 South, Range 25 East, Southeast District Louisiana; Section 13, N.W. ¼ approximate area, 19; S. E. ¼, 134; S.W. ¼, 75.45; Total 228.45." Jordan was the purchaser in all the adjudications, the total acreage adjudicated being 52,506.52 acres, and the total price paid being $26,253.26. Cockrell holds under Jordan. Oil was suspected in township 20 south, range 26 east about 1925, and it then developed that the area covered by Payne's map was not twelve miles from north to south but only nine miles, and by consequence each of his sections while a mile from east to west was only three-fourths of a mile from north to south. The state then employed Washburn to survey the land, and he made the northern townships full size and the southern ones to be only half townships having sections 1 to 18 only. According to his map, sections 11, 12, and 13 of township 20 south, range 26 east, were in the southeast corner of that township, and embraced land which on Payne's map was mostly in sections 25, 26, and 36. The Levee District, since its 1914 grant referred to no map, apparently thought that the descriptions must be taken as referring to fullsize sections as far as there was land to make such, as Washburn had platted it, with the result that there was in many sections much more land uncovered by water than had been specified in the grant, and in 1928 it obtained a second grant which, expressly referring to Washburn's recent map, undertook to convey to the district additional land where Washburn's map showed more land not covered by water than the former grant had conveyed as in the section of that number. It will be remembered that the state was not granting any land covered by the bays, bayous, and lakes. The Levee Board by virtue of this second grant sued for the additional lands in sections 11, 12,

and 13, township 20 south, range 26 east, as shown on Washburn's map, where the oil was discovered. The reasoning of the Supreme Court on the case proceeds upon broad lines. It argues that the state's grant in 1914, although it referred to no map, must have been based on Payne's map which was a state document with whose showing of land areas in its various sections the grant precisely agreed; and by consequence the land shown by that map as in any section was conveyed by the grant by its reference to that section whether Payne had rightly laid down his section lines or not. In like manner conveyances from the Levee District though not referring to the grant agreed with it, and it was shown that the acreage adjudicated for each one-fourth section was arrived at by a surveyor who took Payne's map and estimated the apportionment to the quarter sections of the land shown by it in each section. So the Levee District's conveyances, otherwise incapable of application to any particular acres, are also to be interpreted by Payne's map. The final conclusion was that the land sued for by the Levee Board as in sections 11, 12, and 13 by Washburn's map had really been conveyed to Jordan though shown in other sections by Payne, and could not be granted again by the state nor recovered by the board. The opinion contains some broad language about the Levee District having sold all the land that was formerly granted to it, but we take it to be arguendo and not a deliberate adjudication of so large a question. The adjudication must be sought in the decree.

We find in the decree as above quoted nothing but a rejection of the plaintiff's claim of title to the land sued for. It was thereby finally adjudicated that the Levee District does not own that land. The alternative prayer of Cockrell for a reformation of deeds was not granted. The court held that the deeds as they existed conveyed the land in dispute. Those deeds are in evidence here. They do not by their language purport to convey all the lands owned by the Levee District in the township, but as we have seen they convey stated approximate areas in the separate quarters of the sections mentioned therein. In some sections less than fifty acres were conveyed, and in some none at all. The conveyances from the Levee District do not expressly refer to any map to locate the estimated acreages. But the holding of the Supreme Court was that the Payne

map was the basis of the sales and the deeds must be interpreted by it and must be held to cover the acreages showed by it regardless of where the section lines may be located on the ground by other surveys. There was no purpose to investigate and fix the title to all the land in three townships, or in any one township, but only to the land sued for. It may be that in other suits for other. lands similar contentions may arise and the same reasoning may be followed on the authority of that decision to reach a like result. But we cannot tell in advance what issues may be asserted. It may be that there is in fact marsh land in the townships not shown as such by Payne's map, or that new land has been formed since which belongs to the state and may inure to the Levee District. There may also arise questions of title to the lands which are covered by water, for it is apparent that only those not so covered were referred to by the deeds based on Payne's map. Questions such as these were certainly not litigated in nor settled by the former suit.

 The effect as res judicata of the Louisiana decree is of course that which Louisiana law gives it. 28 U.S.C.A. § 687; Langford v. Bond Realty Corporation (C.C.A.) 47 F.(2d) 480; Parker Brothers v. Fagan (C.C.A.) 68 F.(2d) 616. The Louisiana Civil Code, art. 2286, reads: "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality." The appellant contends that the "thing demanded" means in a suit for land the very same land, and that the second suit must always be on the same cause of action as the first, citing especially State v. American Sugar Refining Co., 108 La. 603, 32 So. 965; and Harnischfeger Sales Corp. v. Sternberg Co., 180 La. 1059, 158 So. 556. The appellee contends that the Louisiana law approximates the common law,* and includes not only the res judicata which forever settles the same cause of action, but also the estoppel by judgment whereby in a suit on another cause of action if the same issue arises under like circumstances the former decision of that issue is binding, citing especially Heroman v. Louisiana

Institute, 34 La.Ann. 805, 813; McNeely v. Hyde, 46 La.Ann. 1083, 15 So. 167; Buillard v. Davis, 185 La. 255, 281, 169 So. 78, and Chief Justice White in City of New Orleans v. Citizens Bank, 167 U. S. 371, 398, 17 S.Ct. 905, 42 L.Ed. 202. Without attempting to resolve this dispute, we assert with confidence that in Louisiana as elsewhere it is the judgment or decree and not the reasoning which led to it that estops. In State ex rel. Puritan Co. v. City of New Orleans, 169 La. 365, 374, 125 So. 273, 277, we read: "The reasons that prompt the rendering of a decree do not form part of the decree, and it is the decree only that may be set up as res judicata. * * * 'In no court with whose jurisdiction we are conversant, do the reasons for judgment form an integral part of the judgment itself. The opinion of the court is but an exposition of the motives upon which its decree is based.' To the same effect, and also as announcing the principle that the reasons for judgment cannot be invoked as res judicata, are the cases of John Chaffee & Brother v. Morgan, 30 La.Ann. 1307; Penouilh v. Abraham, 43 La.Ann. 214, 9 So. 36, and Morgan's Louisiana, etc., Co. v. Moore Planting Co., 130 La. 78, 96, 57 So. 635."

 Furthermore, "The silence of the judgment on any demand which was an issue in the case under the pleadings must be considered as an absolute rejection of the demand." Villars v. Faivre, 36 La. Ann. 398; Soniat v. Whitmer, 141 La. 235, 240, 74 So. 916; Edenborn v. Blacksher, 148 La. 296, 305, 85 So. 817. It is therefore apparent that the Supreme Court did not in the decree under discussion adjudge, as Cockrell alternatively prayed, that the deed from the Levee District was intended to convey all the lands it owned in township 20 south, range 26 east. It certainly did not so adjudge as to the two other townships in dispute to which Cockrell's prayer did not extend. While in its opinion the court used arguments which may prove strong ones in disputes about other lands than those in Washburn's sections 11, 12, and 13, they are not adjudications nor estoppels, but will depend for their weight in further disputes, if such come, on the title put forward by the Levee District and on the circumstances touching the particular areas involved.

*See Kelliher v. Stone & Webster (C.C.A.) 75 F.(2d) 331, and cases cited.

It is lastly argued that the rule against splitting causes of action, Louisiana Code of Practice, art. 156, which is said to apply to suits for land, 1 C.J. Actions, § 105, would be violated by any suit the Levee District may bring for any other of its lands. Since the Levee District lands were sold and required to be sold in separate quarter section lots, it may be that each quarter section is to be esteemed a separate tract of land held under a separate title which may be separately litigated. But it is enough to say now that until the Levee District or its successor proposes a suit for definite land under a definite title it cannot well be determined whether that demand is really a part of the former demand and ought to have been included in it.

We are of opinion that the decree of the Supreme Court of Louisiana finally adjudged only that the Levee District had no title to the lands it sued for described as in sections 11, 12, and 13 of township 20 south, range 26 east, according to Washburn's map. The title to that land as it is actually located is settled, but no other land is covered by the decree.

The judgment of the District Court is accordingly reversed, and a decree directed to be entered that the bill be dismissed.